# CHARLESTON.

JUSTICE *et al. v.* LAWSON *et al.*

Submitted February 6, 1899—Decided April 1, 1899.

1. PARTITION—*Evidence—Possession*

A voluntary partition, not evidenced by writing, in order to defeat a right to such partition under the law, must be clearly proven and must be followed by actual possession in severalty of the several parcels, pursuant to such voluntary partition. *Patterson* v. *Martin*, 33 W. Va, 494. (178).

2. CO-TENANCY—*Possession—Adverse Possession.*

A tenant in common, out of possession has a right to rely upon the possession of his co-tenant, as one held according to the title, and for the benefit of all interested, until some action is taken by the other evidencing an intention to assert adverse and hostile claim. (p. 178).

3 CO-TENANCY—*Adverse Possession—Ouster.*

One tenant in common may oust his co-tenant, and hold in severalty, but a silent possession, unaccompanied with any action amounting to an ouster, or giving notice to the co-tenant that his possession is adverse, cannot be construed into an adverse possession (p. 179).

4. CO-TENANCY—*Adverse Possession—Disseisin.*

It is the intention of the tenant or parcener in possession to hold the common property in severalty and exclusively as his own, with notice or knowledge to his co-tenants of such intention that constitutes the disseisin. (p. 179).

Appeal from Circuit Court, Logan County.

Bill by John Justice and others against R. B. Lawson and others. A decree was rendered, from which defendants appeal.

*Affirmed.*

H. K. SHUMATE, for appellants,

VINSON & THOMPSON, for appellees.

McWHORTER, JUDGE:

Peter Dingess, Sr., a resident of Logan County, died intestate about the year 1829, leaving surviving him nine children, heirs at law,—John Dingess, Guy Dingess, Charles Dingess, William A. Dingess, Polly Dingess, who intermarried with Lewis Lawson, Matilda Dingess, who intermarried with James Lawson, Yantes Dingess, who intermarried with Charles A. Smoot, Minerva Dingess, who intermarried with W. W. MacDonald, Harriet Dingess, who intermarried with John Justice. Said Peter died seised and possessed of numerous tracts of land in his county, including a tract of one hundred and forty acres, which he held by grant from the commonwealth, dated 26th September, 1827, which tract is situate on Main Laurel Fork of Twelve Pole creek. About the year 1842, William A. Dingess, one of the nine children of the said Peter, went upon the tract, built himself a house and made other improvements upon it and continued to live upon it until about the year 1888. No formal partition was ever made of the 'lands left by Peter among his said children. On the 19th day of July, 1859, said William A. Dingess conveyed said tract of one hundred and forty acres with two other small tracts, to James A. Nighbert, in trust to secure a debt therein mentioned of one thousand four hundred and two dollars and fifty-nine cents to Anthony Lawson. Afterwards, on the 28th of April, 1880, William A. Dingess executed another deed of trust to the same trustee on the same tracts and also another tract of one hundred and thirty acres of land, to secure to Anthony Lawson a note for two thousand dollars; and afterwards, in 1885, said trustee sold said tract of one hundred and forty acres of land under said last-mentioned deed of trust, and the same was purchased by Robert M. Lawson, the executor

of said Anthony Lawson, at the price of eight hundred dollars. On the 19th day of August, 1846, a deed was prepared mentioning John Dingess, Jr., and Sarah, his wife, Guy Dingess, and Rebecca, his wife, Charles A. Smoot, and Juliantes, his wife, Lewis B. Lawson, and Polly, his wife, James Lawson, and Matilda, his wife, Minerva A. Dingess, Harriet Dingess, and Charles F. Dingess as grantees, and conveying said tract of one hundred and forty acres to William A. Dingess. This deed was signed and acknowledged only by James Lawson, Guy Dingess, C. A. Smoot, and John Dingess, and, as to them, recorded. At rules held in the clerk's office of the circuit court of Logan County on the first Monday in September, 1891, Allen Dingess, John Justice, James A. Justice, Charles Justice, Sarah McDonald, Mary Mullins, Mary Perry, Guy Lawson, Anthony Lawson, Jr., Emily Lawson, May Belle Lawson and Edward Lawson—the last two infants, suing by Emily Lawson their next friend,—plaintiffs, filed their bill in chancery against R. B. Lawson and others for the purpose of partitioning among the heirs at law and those entitled thereto the said tract of one hundred and forty acres of land, alleging that to divide the said tract into nine parts would greatly injure the value of it, and praying that the same be sold, and the proceeds distributed to the parties entitled thereto, or for partition if it could be conveniently made, and for general relief. The bill sets up the said deed of August 19, 1846, as conveying to W. A. Dingess the one-ninth interest of each John Dingess and Guy Dingess; also the trust deed of April 28, 1880, given on said tract to James A. Nighbert, trustee, to secure a debt to Anthony Lawson, and alleging the sale by Nighbert under said deed of trust of three-ninths thereof, and the purchase by Anthony Lawson; that said William A. Dingess only owned one-ninth in his own right as heir at law of his father, and the two-ninths by purchasing from his brothers John and Guy; and that by said deed of trust he only conveyed the said three-ninths to Nighbert, trustee, he having no authority, either express or implied, to convey the six-ninths which was owned by the other brothers and sisters; and charging that Anthony Lawson had died, leaving surviving him R. B. Lawson,

Robert Lawson, Roxalina Y. Cooper, wife of William Cooper, and Elizabeth Leahman, who are entitled to the said undivided three-ninths of said tract by virtue of the purchase by their father under the trust sale. The bill proceeds to allege who the parties are entitled to the other six-ninths of said tracts, and prays for partition or sale. Defendants R. B. Lawson and others appeared, and filed their demurrer, which, being heard, was overruled and the defendants ordered to answer by the next term. On the 28th day of April, 1892, the death of plaintiff Allen Dingess was suggested; that he left his -wife, Mary Dingess, his sole devisee and distributee; and the case was revived in her name, and the case was ordered to proceed in the name and style of "Mary Dingess and Others vs. R. B. Lawson and Others," and by consent of parties the defendant Robert M. Lawson, sued as Robert Lawson, at his request, was made a party defendant in his own right and as executor of the last will and testament of Anthony Lawson, deceased; and the said defendants Lawson filed their joint and several answers to plaintiff's bill, to which plaintiffs replied generally. The answer denied that Peter Dingess, Sr., ever had title to said one hundred and forty acres of land, or that the commonwealth granted it to him; denied that the plaintiffs, or either of them, ever had title to said tract. It admits the execution by William A. Dingess of the deed of trust of April 28, 1880, but denies the sale thereunder of August 1, 1889, by the trustee, or that Anthony Lawson became the purchaser at such sale; and avers that at the date of the execution of said trust deed William A. Dingess was in the actual and sole possession and occupancy of the said tract of one hundred and forty acres, claiming it as his own, and had been so in possession and occupancy of it for about forty years, and that for all those years said tract had been charged on the land books of Logan County in the name of W. A. Dingess, alone, with the taxes assessed thereon, and such taxes paid by him alone; that said Robert M. Lawson was duly qualified as executor of Anthony Lawson, deceased; that Trustee Nighbert did sell, under and by virtue of said deed of trust, said one hundred and forty acres of land, on the 5th day of October, 1885, at which sale said Robert

M. Lawson, as the executor of the last will and testament
of the said Anthony Lawson, deceased, being the highest
bidder, did become the purchaser at the price of eight
hundred dollars for the benefit of the devisees mentioned
in the will of said Anthony, and that on the 25th day of
April, 1892, the said Nighbert, trustee, executed and de-
livered to said executor a deed for the said one hundred
and forty acres of land, and filed said deed as "Exhibit
J. A. N." with the answer; avers that said land was never
entered on the land books and charged with taxes in the
name of plaintiffs, or any of them, or in the name or names
of any person or persons under whom they, or any of
them, claim title, and avers forfeiture for non-entry, and that
the title so forfeited vested in said William A. Dingess,
who was in actual possession and occupancy of the tract,
and paying the taxes thereon for each and every year since
the creation of the State of West Virginia, and avers that
the devisees of Anthony Lawson were the true owners of
said tract of one hundred and forty acres, both in law and
equity; avers that plaintiff's claim is stale, and barred by
lapse of time, if it ever had an existence legal or equitable;
that plaintiffs, as well as those under whom they claim the
land, had been guilty of laches in the prosecution of their
claim, and for that reason are barred of their relief in this
suit; denies that said tract is not susceptible of division,
and avers that if the claim of plaintiffs, or of any of them,
set up to a part of said land, be sustained, the said land is
clearly susceptible of division. And defendant Nighbert
denies that he has any interest in the subject-matter of
the suit, and asks to be dismissed therefrom. On the 25th
day of October 1892, the case again came on to be heard,
and, it appearing from a copy of an order of the county court
of Logan County that it refused to probate the writing
purporting to be the last will and testament of Allen Din-
gess making Mary, his wife, sole devisee, therefore the
decretal order made on the 28th day of April, 1892, reviv-
ing this case in the name of Mary Dingess as party plain-
tiff was set aside, and the cause ordered to be prosecuted
to a final decree by the surviving plaintiffs named in the
bill, with the same effect, in all respects, as if said Allen
Dingess had not died; and, the said Mary having an inter-

est as the widow of said Allen, and a necessary party to the suit, and it further appearing that she had intermarried with one William T. Mead, and also that said Allen left surviving him two infant children, viz. Mollie Dingess and Yantes Dingess, the case was revived in the names of said infants, heirs at law of said Allen, as plaintiffs, by Hugh Tony, their next friend, and the plaintiffs in the bill were directed to amend the bill by making the said Mary Mead a party defendant, and the case was, on motion of plaintiffs, remanded to rules, with leave to plaintiffs to amend their bill so far as they might deem necessary.

Plaintiffs filed their amended bill, making Yantes Dingess and Mollie Dingess, who sue by Hugh Tony, their next friend, Edward W. Clark, trustee, Charles H. Hall, trustee, W. E. Justice, trustee, and the Guyandotte Coal-Land Association, a corporation, additional plaintiffs, and alleging that the original bill and the answers and proceedings had thereunder were prosecuted to a final hearing, in which a decree was to be rendered according to the prayer of the plaintiffs' original bill; and that said decree was prepared and marked for entry, when it was discovered that some of the parties defendant had been by mistake omitted from the proceedings, and it became necessary to remand said cause to rules ni order to make other parties defendants therein. The bill then proceeds to reallege the allegations of the original bill, and to set forth dates of decease of certain of the parties interested in the property sought to be partitioned, and to give the names of the heirs at law of such deceased parties, and filed as Exhibit No. 1 a statement or schedule of the quantity of land each party is entitled to; and alleges that by reason of the peculiar location of said land, and having been cut up by the rights of way of the Norfolk & Western Railroad Company, it is not practicable to make partition thereof to the best interest of all concerned, and that it will be necessary to sell the lands, and divide the proceeds; that on the 7th of January, 1893, Emily Lawson, wife of James Lawson, conveyed by deed (a copy of which is filed as an exhibit with the bill) to Edward W. Clark, Charles H. Hall, and W. E. Justice, trustees for the Guyandotte Coal-Land Association, a corporation, all her interest in said land, and

plaintiffs E. W. Clark and others, trustees, allege that since the institution of this suit and the filing of the original bill "they have purchased and become the owners of the following interests in the real estate sought to be partioned,—that is to say, of R. B. Lawson, executor, etc., three-ninths plus one-ninth of one-ninth, Mollie Carson one-half of one-ninth, the heirs and widow of Allen Dingess one-ninth, the McDonalds one-ninth, the Justices one-ninth ;and they ask that their purchases as aforesaid be confirmed to them." And on the 10th day of January, 1894, A. B. Lawson, administrator, and in his own right, was, on his petition, made a party defendant, and, it appearing to the court that Gracie Wiley, Franklin Wiley, and —— Wiley, children of Bettie Wiley, may have some interest in the subject-matter of this suit, on motion of plaintiffs they were permitted to amend their bill at bar making them parties defendant, which was done, and, it appearing that said new defendants were infants, Don Vinson was appointed their guardian *ad litem*, who, waiving process, appeared in open court, and tendered the answer of said infants, which was filed, and to which plaintiffs replied generally; and the defendants the Lawsons and Nighbert filed their demurrer to the bill, which, being argued, was overruled, and a rule given said defendants to answer within sixty days from the 10th of January, 1894. (Said demurrer and the said answer of the infants Wiley are not found in the record).

On April 30, 1894, defendants R. B. Lawson, William Cooper, and Roxalina Cooper his wife, late Roxalina Lawson, Elizabeth Lawson, Robert M. Lawson, in his own right, and as executor of Anthony Lawson, deceased, and Ann Brooke Lawson, widow of Anthony Lawson, deceased, filed answer to the amended bill, denying the first allegations thereof, "that the original bill and the answers and proceedings had thereunder were prosecuted to a final hearing, in which a decree was to be rendered according to the prayer of the plaintiffs' original bill, or that any such decree was prepared and marked for entry, when it was discovered that some of the parties defendant had been by mistake omitted from the proceedings, but that, on the contrary, said cause was remanded

to rules to perfect an imperfect bill so that a proper defense could be made thereunder by these defendants." They admit (what they denied in their former answer to original bill) that Peter Dingess, Sr., died seised of a tract of one hundred and forty acres of land, and that it was granted to him by the commonwealth of Virginia, as shown by "Exhibit A." Copy of patent filed with original bill aver that on the 5th day of July, 1841, some ten or twelve years after the death of Peter Dingess, Sr., his children and heirs at law entered into an agreement to divide and partition among themselves the land of which said Peter died seised, and in accordance with said agreement they divided and partitioned among themsevles the said lands, of which the said one hundred and forty-acre tract was in said partition allotted to William A. Dingess, and received by him as part of his share; and in support of their contention file as an exhibit with their answer a copy of a deed from William A. Dingess and John Dingess, as grantees, to "Guy Dingess and others, their brothers and sisters, heirs of Peter Dingess, deceased," grantees, which deed bears date July 5, 1841, and recites: "That whereas, the said Peter Dingess, in his lifetime, conveyed to the said parties of the first part 100 acres of land adjoining Island tract, part of 170 acres survey, by deed of record in the county of Logan, and other arrangements being made between said heirs: Now, in consideration of $100. to them in hand paid by the said heirs to the said William A. and John Dingess, they have bargained, sold, relinquished, and by these presents do forever relinquish, to the said parties of the second part, all right, title, and interest which they severally acquired under said deed so made by said Peter Dingess in and to said 100 acres of land and the appurtenances; to have and to hold unto said parties of the second part, and their heirs and assigns, forever, free from the claim of said William A. and John Dingess and their heirs and assigns forever." The answer avers: That under said partition William A. Dingess went upon said one hundred and forty acres, which was then wholly uncultivated, and improved the same, as before averred in former answer. That, after three or four years of such occupancy by said William A. Dingess, and after he had

made some improvements on said land, "a dissatisfaction arose on said parol partition, and the said Wililam A. Dingess, to quiet his claim and title and to preserve his labor spent upon said tract, purchased said tract of land of his brothers and sisters, and wholly paid for the same, and on the 19th day of August, 1846, his brothers Guy and John conveyed to him their interest in said tract of land and his brothers-in-law James Lawson and C. A. Smoot also united in said conveyance, and the remainder of said heirs agreed to so unite. A copy of said conveyance is filed with plaintiff's bill. Under said purchase the said William A. Dingess continued from that time until about five years ago in the continuous, actual, open, notorious possession of said tract adverse to his brothers and sisters," continuing to improve the same, taking all the profits to himself, etc. That after about thirteen years of such possession said William A. Dingess became indebted to Anthony Lawson, Sr., and, for the purpose of securing him in said debt, on the 19th of July, 1859, executed to James A. Nighbert a deed of trust on said tract of one hundred and forty acres, claiming to be the owner thereof, and in said trust deed warranting generally the title thereto; and exhibit a copy of said trust deed, which was duly recorded; deny that at the sale under the second deed of trust by trustee Nighbert he sold only the three-ninths, or that Anthony Lawson purchased, but aver that, when sold, the whole was sold, and purchased by Robert M. Lawson, the executor of Anthony, at the price of eight hundred dollars. Defendants do not deny, in their answer, the purchase, since the institution of this suit, by the trustees who are made plaintiffs in the amended bill of the various interests set out in the amended bill. They deny that William A. Dingess, by the said deeds of trust, only conveyed three-ninths of the one hundred and forty-acre tract, but aver that he conveyed the whole tract; and again plead that plaintiffs' claim, if any they have, is stale, and that they are guilty of laches in prosecuting it; and deny that Exhibit No. 1 is a correct statement of the quantity of lands each party would be entitled to if plaintiffs' claims were well founded. To which answer plaintiffs replied generally, and gave

notice that they would ask a submission for final decree at the next term of the court.

Depositions were taken and filed on behalf of both parties and on the 5th day of January, 1895, the cause came on to be heard on plaintiffs' motion to submit the cause for hearing, when the defendants moved the court to continue the cause, and filed the affidavit of H. K. Shumate in support of their motion, and plaintiffs tendered and filed the affidavit of C. M. Turley, in support of their resistance of said motion, and said motion being considered, was overruled, and the cause heard; the court holding that the plaintiffs were entitled to have partition, and ascertain to what part of said land each of the parties to the suit was entitled, and appointing commissioners to partition the same if it could be done, and, if not, that the fact be reported. The commissioners reported that the land could not be divided, and recommended a sale thereof in gross. Exceptions were filed to said report, and the same was set aside for irregularities, and the commissioners directed to go upon the land, and execute the decree of partition. The commissioners again reported that the property was not susceptible of partition, recommending a sale of same in gross, and ascertained the fee-simple value to be ten thousand dollars. And, there being no exception to said report, the same was, on the 20th of February, 1896, upon the hearing of the cause, confirmed, and the said tract of land decreed to be sold, and a commissioner appointed to execute the decree. The same was duly sold by the commissioner for the sum of seven thousand two hunderd and two dollars, on the terms provided by the decree of sale, —one-third cash, and residue in two equal payments at nine and eighteen months, with interest from day of sale, —which sale was, on the 7th day of May, 1896, confirmed to the purchasers, E. W. Clark, J. I. Doran, and S. W. Colton, Jr., trustees. The defendants R. M. Lawson, in his own right and as executor, R. B. Lawson, William Cooper, Roxalina T. Cooper, Elizabeth Leahman, and Ann B. Lawson appealed to this Court, insisting that there is error in the decree of January 5, 1895: First. "That the court erred in holding that appellants held only three-ninths undivided interest in said land, the whole having been

deeded to the trustee in 1859, and again in 1880, and the whole sold under the second trust deed in 1885, and so conveyed. The deed of 1859, made by W. A. Dingess to trustees was a sale for a valuable consideration, and gave notice to the co-tenants of said Dingess that he was claiming the whole, and it was acquiesced in for over thirty years. If exclusively appropriating the profits under a claim of exclusive rights, when no other tenant is in actual possession, is not an ouster [which we think it is], sale of entire tract is so unquestionably, and the statute of limitations would bar plaintiffs' action." Second. "If W. A. Dingess was not entitled to the whole of said tract, he was, under his own evidence, introduced by plaintiffs, entitled to five-ninths, and it was error not to so decree." Third. "The court erred because there was evidence showing a parol partition by the heirs of Peter Dingess, Sr., in which partition the 140 acres was assigned to and accepted by W. A. Dingess as his share." The evidence to prove a parol partition is by no means clear. Peter H. Dingess, son of W. A. Dingess, says his father moved onto the one hundred and forty acre tract about 1843, when there was no part of it in cultivation; that he helped to clear a good part of it; that his father lived on it, and claimed it, and paid the taxes on it while he lived on it. Never knew of any of his father's brothers or sisters claiming any interest in it, and says he understood from some of the children there was a division made among themselves, and that he understood his father was to have the one hundred and forty acres. Witness was sixty-four years old, and had known the one hundred and forty-acre tract since he was eleven years of age. Robert Dillon, seventy-two years old, had lived in Logan County since a year old. Had helped old man Dingess (W. A. Dingess) do a heap of work on that place. Dingess said it was his. Was not acquainted with any of W. A. Dingess' brothers and sisters but Charley; was well acquainted with him, had seen John and Guy often. Did not know that he ever heard any of W. A. Dingess' brothers and sisters claim any interest in said one hundred and forty-acre tract of land. A. H. McDonald, sixty-five years old, had lived in Logan County all his life. Says he had known the one hunderd and forty-acre tract

over fifty years. Never knew any one claiming it but William A. Dingess, until recently. Did not recall any one putting up any claim for it until about the last three or four years. Was acquainted with the children of Peter Dingess, Sr., from fifty years back until their deaths, and could not recall that he ever heard any of them making any claim or having any interest in the one hundred and forty-acre tract. Sallie Dingess, widow of John Dingess, eighty-one years old, was acquainted with the brothers and sisters of her husband. Knew the tract of land on which William A. Dingess lived. Had heard talk of it a great deal. "They all called it William A. Dingess' land, and he claimed it after he moved there. William A. Dingess bought all the shares; of course he did." P. K. McComas, seventy-two years old, lived in Logan County since 1844. He was well acquainted with all of the children of Peter Dingess, Sr. Says Guy Dingess told him of an arrangement between the heirs as to the real estate of his father. And Charles Dingess, another one of the heirs, told him that in the partition of his father's lands he had got the land at the mouth of Island creek as his portion, and, that his sister Harriet Dingess had received her portion of the land on the river below and adjoining his land. It was always understood that W. A. Dingess got part of his portion on Twelve Pole creek, where he lived, a survey made by his father. Did not know where the others got their portion. Never heard the others speak of it. James A. Nighbert was well acquainted with the children of Peter Dingess, Sr., since about 1846. Knew the land in controversy. W. A. Dingess lived on it, and he always understood it to be his land. Upon the faith of it witness had given him credit before and after the war. Never heard the title disputed until this suit was instituted. He thinks the land was charged to W. A. Dingess before and since the war, and witness had paid a portion of the taxes for Anthony Lawson, for whose benefit the trust deed was given in which he was trustee. William Stratton was well acquainted with the childern of Peter Dingess, Sr. When deputy sheriff, in 1841 or 1842, he stayed all night at W. A. Dingess' house on Twelve Pole, and he lived there until he died. Built a good country house on the place, and

lived in it. That when he was clerk of the county court, in 1845, a matter of making deeds between the heirs of Peter Dingess, deceased, was talked about in his presence by most of the heirs. His recollection is that John Dingess got the land on Dingess Run creek; William A. Dingess the land on Twelve Pole creek, where he was then living; Harriet got a piece of land where John Justice then lived; Minerva got the big island at or near the court house; Charles got the old home place, or part of it; Matilda Lawson got the land, or part of it, where Moses Mounts then lived. Did not recollect where Polly Lawson and Yantes Smoot got any land. Guy Dingess used to tell him that he did not get any land. That not long after he became clerk he was called on to take acknowledgement of, he thought then, the youngest ones, Minerva, Harriet, and Charles, and felt certain that he took as many as two of them that had been drawn up before that. He thinks there was a deed from the other heirs to James Lawson and his wife, and another to John Dingess, and another to W. A. Dingess, all on hand at and about the same time, and relating to these same lands. His understanding was the parties Minerva, Harriet, William A., and John were owners of the lands they were living on at that time. This is the evidence of a parol partition. W. W. MacDonald, seventy-seven years old, married Minerva Dingess, daughter of Peter, Sr. Was well acquainted with all of the children. Did not know of any partition of the lands among the heirs and did not think he ever heard of any. Never heard of such a thing as any particular part of the estate being allotted to his wife, Minerva, as her part of the estate, and "never heard it named before to-day." That when his wife died she left surviving her two children,—Charles Lewis MacDonald, who died 22d of August 1888, unmarried, and without children; Mary A. MacDonald, who had since married Oliver Perry, who was yet living. He claimed no interest in this suit. Is not positive, but thinks he and his wife made a deed, not long after they were married, conveying their interest to Charles Dingess. If he had any interest in the estate of Peter Dingess, Sr., at the time this suit was brought, did not know it, and did not claim any. S. S. Altizer, clerk of Logan

.county court, was introduced, and filed with his deposition two deeds copied from the records of his office,—the first dated August 23, 1869, from Charles Lewis MacDonald and Mary A. MacDonald, heirs at law of said Minerva, conveying to Charles F., Dingess "all their right, title, and interest, and claim or share of the said Minerva in and to all that certain tract of land now owned and occupied by Peter D. Morgan at the mouth and on Island creek, including the island near Logan Court House," etc.; the other from the same grantors to John Dingess, grantee, dated 1st day of August, 1870, conveying all the rights, title, interest, and claim of said grantors, as heirs as aforesaid, "in and to all that certain tract of land containing one hundred acres, made for the said Peter Dingess, deceased, and patented, granted to him in his lifetime, by the commonwealth of Virginia, on Dingess, now a branch of·Guyandotte river, in the county of Logan, State of West Virginia, being the one undivided ninth part of one-half of said survey,·with covenants of special warranty." William A. Dingess testified July 16, 1892. Says he moved onto the one hundred and forty-acre tract in 1842, and lived there until about four years ago. Says he owned one interest in said one hundred and forty acres, which he inherited from his father; and purchased from James Lawson three interests, which he claimed to own,—that of his wife and Guy Dingess and John Dingess; and also purchased from C. A. Smoot the interest which he and his wife owned, which made five-ninths of said tract of land which he claimed to have owned. Never claimed to own the interest of Charles Dingess, Polly Dingess, Minerva Dingess, and Harriet Dingess; never had any right to claim it; never paid anything for it. Says- he paid the taxes, was living on it, and thought it was his duty to pay the whole of it. C. M. Turley and Z. T. Vinson, attorneys, were introduced on behalf of the plaintiffs to prove that Judge Ferguson, attorney for defendants, had represented to them that the defendants had abandoned their claim to the whole property, and would only contend for three-ninths thereof, purchased by them at the sale under the deed of trust from W. A. Dingess; and that upon the faith of such rep-

resentations they had purchased certain interests from some of the plaintiffs for the new plaintiffs mentioned in the amended bill, as trustees for the Guyandotte Coal-Land Association; and with the deposition of witness Turley was filed a copy of the decree alleged in the amended bill to have been drawn by said Ferguson, and directed to be entered in the cause, but which was not entered, allotting to his clients, the Lawsons, three-ninths of the property in partition, and allotting the remaining six-ninths to plaintiffs. It is contended by appellees that by reason of the representations of the defendants' attorney, Judge Ferguson, that defendants had abandoned their claim to the whole, and would only claim the three-ninths conceded to them, and because, relying upon such representations of said attorney, the new parties plaintiff had purchased certain interests of some of the plaintiffs, the defendants were estopped from claiming more than the three-ninths as against the said purchasing plaintiffs. There is no evidence, however, that the defendants themselves, or any of them, made such representations to plaintiffs or their attorneys, or that they had knowledge of, or consented to or authorized, such representations. And it is well settled that the powers of an attorney employed to look after the interests of his client in a cause has not the power or authority "to release his client's cause of action, or to compromise the claim of his client." The powers of and restrictions upon the attorney so employed are well set out in Mechem, Ag. §§ 812, 813, and cases cited. See also, *Crotty* v. *Eagle's Adm'r*, 35 W. Va. 143, (13 S. E. 59).

Here a parol partition is attempted to be set up in defense of the bill praying for partition of one parcel of an estate. While the quiet and uninterrupted possession of this tract, one hundred and forty acres, sought to be partitioned, is proved to have been with W. A. Dingess for a sufficient time, if it had been adverse, to have ripened into a good title, yet there is no evidence of like possession on the part of others of the heirs of the portions set apart and allotted to them in said partition. On the contrary, deeds are introduced as evidence, made in 1869 and 1870, nearly thirty years after such partition is alleged to have been made by some of the other heirs of their right, title,

interest, and claim in and to certain parcels claimed to
have been allotted to them in severalty twenty-odd years
before, which interest they describe as being one undi-
vided ninth part, showing clearly that they then had never
understood that it was held by them in severalty. In *Patter-
son* v. *Martin*, 33 W. Va. 494, (10 S. E. 817, Syl., point 2),
it is held that "a voluntary partition, not evidenced by
writing, in order to defeat a right to such partition under
the law, must be clearly proven, and must be followed by
actual possession in severalty of the several parcels, pur-
suant to such voluntary partition." In the case at bar
there is not a pretense of attempting to prove the accep-
tance of such partition and possession thereunder on the
part of the other heirs. One of them says he never heard
of such partition, and never heard it named until that day
on which he was testifying. Several witnesses speak of
W .A. Dingess calling it his land, and claiming it was his
own, but none of them show that he was claiming it other-
wise than any one might speak of land as his which he had
leased or was otherwise occupying. His expressions
about it did not indicate that he was holding it adversely
to the world. He says himself that he paid the taxes on it
because he thought it was right that he should, as he was
enjoying it. It is claimed not only that W. A. Dingess held
the one hundred and forty acres by partition, but that dis-
satisfaction arose about the partition, and he purchased
the same from the other heirs, and then held it by pur-
chase under the deed of 19th of August, 1846, which names
all the other heirs as grantors, and purports to convey
eight-ninths of the tract to him, but is signed and acknowl-
edged only by Guy and John Dingess of the heirs, and by
James Lawson and C. A. Smoot, who only had their mar-
ital rights, each, in one-ninth of it, and of course conveyed
only the rights they held. So that by deed he acquired
two-ninths in addition to what he held in his own right.
The deed fails to make mention of any partition, but does
mention a consideration which is probably a fair value of
the interest being conveyed at that time. "A tenant in
common, out of possession, has a right to rely upon the
possession of his co-tenant as one held according to the
title, and for the benefit of all interested, until some action

is taken by the other evidencing an intention to assert adverse and hostile claim." *Hignite* v. *Hignite*, 65 Miss. 447, (4 South. 345); *McClung* v. *Ross*, 5, Wheat. 116: "One tenant in common may oust his co-tenant, and hold in severalty; but in silent possession, unaccompanied with any act amounting to an ouster, or giving notice to the co-tenant that his possession is adverse, cannot be construed into an adverse possession." *Pillow* v. *Improvement Co.*, 92, Va. 144 (23 S. E. 32 Syl., point 4). *Hoey* v. *Porter*, 22 W. Va. 120 (Syl., point 4): "It is the intention of the tenant or parcener in possession to hold the common property in severalty, and exclusively as his own, with notice or knowledge to his co-tenants of such intention, that constitutes the disseisin." It is insisted by appellants that the conveyances by deed of trust of the whole of the tract by W. A. Dingess to James A. Nighbert, and recording the same, was an act of ouster and adverse possession. "If one co-tenant executes and delivers a deed of the entire estate, and the grantee causes the deed to be recorded, and enters into possession claiming title to the entirety, and openly exercises acts of ownership, this is a disseisin of the co-tenants." Busw. Lim. § 300; *Parker* v. *Proprietors*, 3 Metc. (Mass.) 91. In the case at bar the possession was not changed by the conveyance, and the purchaser at the sale under the trust deed could not take possession until the trustee put him in possession after the sale; and it does not appear from the record that possession was even taken by the purchaser under the sale made by the trustee, and the deed is averred by the purchaser to be dated April 25, 1892, some time after the institution of this suit. A conveyance alone, without possession taken under it, cannot amount to an ouster. The same remark is applicable to a mortgage of the whole. If such mortgage can have any relevancy in determining whether the mortgagor had been guilty of an ouster, it must be in connection with other circumstances tending to show an intent to hold the property adversely. Freem. Co-Ten. § 226; *Hannon* v. *Hannah*, 9 Grat. 146. For the reasons herein stated, the decree of the circuit court is affirmed.

*Affirmed.*