LE BLANC et al. v. JACKSON et al.
(No. 42–2698.)

(Commission of Appeals of Texas, Section B.
April 2, 1919.)

1. DEEDS ☞207—EVIDENCE—EXECUTION.

In a suit between heirs involving title to lands, evidence *held* insufficient to show that a conveyance was made by either of two of deceased's sons to a third son.

2. TENANCY IN COMMON ☞15(1)—ADVERSE POSSESSION BY COTENANT.

The existence of the relationship of tenants in common robs the possession and use of the property by one of them of all probative force as against others, and, the possession being lawful, no inference of adverse claim arises therefrom.

3. TENANCY IN COMMON ☞15(10)—ADVERSE POSSESSION—NOTICE TO OTHER JOINT OWNERS—EVIDENCE.

In an action involving the title to land, evidence *held* insufficient to show that the possession of any part of the land by an heir and tenant in common was ever adverse to his brothers, also tenants in common.

4. TENANCY IN COMMON ☞15(10)—ADVERSE POSSESSION—NOTICE—PRESUMPTION.

Neither general reputation nor rumor have any weight in establishing a deed from certain tenants in common to another, unless of such general notoriety as to raise a presumption that the parties sought to be affected knew thereof; and, where such parties were in comfortable circumstances and the supposed grantee was poor, his possession must be attributed to indulgence rather than presumption of the deed.

5. DEEDS ☞31—DEEDS SIGNED BY DECEASED GRANTOR'S HEIRS.

Where a deed executed and delivered after death of the person named in the granting clause as one of the grantors was signed and acknowledged by persons shown by extrinsic evidence to be heirs, but the deed did not identify the parties as such, it did not pass the interest of such heirs.

6. GUARDIAN AND WARD ☞111—DEED—EXECUTION BY CURATOR—VALIDITY.

A deed signed by grantor, per another as curator, reciting that grantor by said curator appeared before the notary and acknowledged its execution, was executed by her curator, and in the absence of evidence of his authority no title passed.

7. TRESPASS TO TRY TITLE ☞41(2) — EVIDENCE—DEEDS—COMMON SOURCE OF TITLE.

Rev. St. 1911, art. 7749, provides that in trespass to try title plaintiff may offer in evidence deeds for purpose of showing common source of title only, and that such deeds shall not be evidence of title in defendant unless offered by him, so that plaintiffs, having shown an undivided interest in the land, however small, were entitled to recover all of the land as against the defendant relying on evidence of deeds merely showing common source.

8. HUSBAND AND WIFE ☞274(4)—COMMUNITY PROPERTY—INTEREST OF HEIRS OF WIFE—PRESUMPTION.

Where plaintiffs sought an interest in land as community property of their mother and stepfather, the burden is upon them to show the community interest and its extent, where being acquired by deed after the death of the wife, it was presumptively the separate property of the husband, and plaintiffs asserting an equitable title were bound to show that purchaser had prior notice of their equity; mere knowledge of the stepfather's marriage to plaintiffs' mother being insufficient.

Error to Court of Civil Appeals of First Supreme Judicial District.

Suit by Ellen Craigen and others against R. S. Jackson for the recovery of land alleged to be community property of plaintiffs' mother and stepfather. Later the heirs of Azema Broussard, deceased, of Emile Broussard, deceased, and of Theophile Broussard, deceased, respectively, intervened, claiming title to respective portions of said land inherited by the several ancestors from P. O. Broussard and interveners were made defendants by plaintiffs' amended petition. Judgment was rendered in favor of the plaintiffs Ellen Craigen and Odelia Carouthers against all the other parties to the suit for one-eighth part of the two-eighths' interest of said land inherited by Theophile Broussard and Emile Broussard and for a small interest of a portion of the land inherited by Victorie B. Hebert, and that the intervener Alodie Broussard Le Blanc take nothing, that the heirs of Azema Broussard recover one third of one-eighth interest in said land, and that the heirs at law of Emile Broussard and Theophile Broussard take nothing, and that the heirs at law of Emerente Broussard recover in an undivided one-eigth interest in the land and in favor of the defendant R. S. Jackson for the remainder of said land, which judgment was affirmed by the Court of Civil Appeals (161 S. W. 60), except as to the judgment against the heirs of Azema Broussard, which was reversed and judgment rendered in their favor, and the plaintiffs and the defendants R. S. Jackson, the heirs of Emile and of Theophile Broussard, bring error. Affirmed in part, reversed in part, and remanded.

Blain & Howth, of Beaumont, for plaintiffs in error Ellen Craigen and others.

Thos. J. Baten and E. E. Easterling, both of Beaumont, for other plaintiffs in error.

Lipscomb & Lipscomb, of Beaumont, for defendants in error.

MONTGOMERY, P. J. This suit involves the title to 666 acres of land, a part of the W. H. Smith league in Jefferson county. All parties to this suit claim through P. O. Broussard as a common source of title. P.

O. Broussard owned the land at the time of his death. He died about the year 1876, leaving surviving him three sons, Emile Broussard, Theophile Broussard, and Derneuville Broussard, and four daughters, Delzende Broussard, Ezilda Broussard, Victorie Broussard, and Emerente Broussard. He also left surviving him four grandchildren, the offspring of his deceased daughter, Azema Broussard.

P. O. Broussard died intestate, and his lands passed according to law of descent in Texas. It appears that Derneuville Broussard, in addition to the one-eighth inherited by him, acquired by deed from his sister, Delzende Broussard her one-eighth, and from his sister Ezilda Broussard her one-eighth, and also acquired by deed one thirty-second undivided interest from one of the four heirs of his deceased sister, Azema Broussard.

Derneuville Broussard prior to his death joined by all of his children sold all of their interest in the land in controversy to R. S. Jackson.

Derneuville Broussard married a widow having two children by a former husband. These children are Ellen Craigen and Odelia Carouthers, whose husband is Edgar Carouthers. These stepchildren did not join in the conveyance to Jackson.

This suit was originally brought by Ellen Craigen and Odelia Carouthers, joined by her husband, against R. S. Jackson, to recover the land in controversy, they claiming that the land was community property of their mother and Derneuville Broussard, and that they were entitled to their proportionate part of their mother's community interest. The petition, however, does not disclose what interest they claim, the suit being for the entire tract.

Afterwards the heirs of Azema Broussard, deceased, the heirs of Emile Broussard, deceased, and the heirs of Theophile Broussard, deceased, intervened, claiming title to the respective portions of said land inherited by their several ancestors from P. O. Broussard.

Ellen Craigen and Odelia Carouthers, joined by her husband, Edgar Carouthers, amended their petition, and made all of the interveners parties defendant, and the several interveners by amendment sought a judgment against the plaintiffs and the defendant Jackson for the title and possession of the land.

The foregoing is sufficient as to the general nature of the suit. The case was tried by the court, a jury being waived, and the court rendered judgment in favor of the plaintiffs Ellen Craigen and Odelia Carouthers against all the other parties to the suit for one-eighth part of the two-eighths interest in said land inherited by Theophile Broussard and Emile Broussard, and for a small interest in that portion of said land inherited by

Victorie B. Hebert. (As to this interest of Victorie Hebert there is no complaint that the judgment was improper.) The court further rendered judgment that the intervener Alodie Broussard Le Blanc take nothing; that the heirs of Azema Broussard recover one-third of one-eighth interest in said land; that the heirs at law of Emile Broussard and Theophile Broussard take nothing, and that the heirs at law of Emerente Broussard recover an undivided one-eighth interest in the land, and as to the remainder of said land judgment was rendered in favor of the defendant Jackson.

Jackson attempted to appeal from the judgment of the trial court, but his appeal was dismissed, and no complaint is made of this action of the Court of Civil Appeals.

The Court of Civil Appeals (161 S. W. 60) affirmed the judgment of the trial court except as to the judgment rendered against the heirs of Azema Broussard, the court holding that the interest of Celema Broussard, one of said heirs, did not pass by a certain deed under which it was claimed her interest was conveyed, and that the heirs of Azema Broussard were entitled to recover her interest; the said Celema Broussard being dead.

The court granted the application of R. S. Jackson, of Ellen Craigen, and Odelia Carouthers and of the heirs of Emile Broussard and Theophile Broussard for a writ of error, and the whole case is now before this court. All other necessary facts will be stated in the opinion.

## Opinion.

The facts in this case are very complicated, but the questions involved are:

First. Is the evidence sufficient to authorize the finding by the trial court that Emile Broussard and Theophile Broussard conveyed their interest in the land to Derneuville Broussard?

Second. Did the deed signed by the heirs of Emerente Broussard, but in which their names did not appear as grantors, pass their interest in the land?

Third. Did the purported deed of Celema Broussard pass her interest in the land?

Fourth. Was the land purchased by Derneuville Broussard from his sisters Delzende Broussard and Ezilda Broussard and from the heirs of his sister Azema the community property of Derneuville Broussard and his wife, or was it his separate property?

[1] There was no conveyance produced on the trial from either Emile Broussard or Theophile Broussard to Derneuville Broussard or to any other person, but certain evidence was offered which the court found sufficient to authorize the presumption that such deeds had in fact been executed. The sufficiency of this evidence is the first, and perhaps the most important, question in the case.

We have carefully considered the entire record, and from the findings of fact made by the trial court and the Court of Civil Appeals, and from an independent examination of the statement of facts we will undertake to state the facts which we think can be properly considered in determining this question.

P. O. Broussard died about the year 1877 in the state of Louisiana, where he then resided. He owned at the time of his death a considerable estate in land and cattle and other property in that state situated in or about Johnson's bayou in the southwest corner of that state. He died intestate. He left surviving him seven children whose names we have already stated and the descendants of a daughter, as heretofore stated. At the time of his death he owned two tracts of land, a part of the Smith League in Jefferson county containing approximately 1,000 acres. One of these tracts is the land in controversy.

Theophile Broussard died in December, 1881, leaving as heirs some of the interveners in this case, and Emile Broussard died in 1904, leaving heirs who are also interveners.

At the time of P. O. Broussard's death he was the owner of some cattle running on the range in Jefferson county, Tex. Derneuville Broussard at the time of his father's death lived in Texas, and resided on the 666-acre tract of land in controversy, and had resided on said land for several years previous to his father's death. He continued to reside on the land until the year 1907, and had on the land a small house and about 20 acres fenced and under cultivation. The remainder of the land was open prairie and was not inclosed. After the death of P. O. Broussard his son, Emile Broussard, principally looked after the business of the estate in Jefferson county, Tex. Under his direction J. Burrell, an old citizen of the county, for several years after the death of P. O. Broussard and up to the year 1881, rendered the land for taxation in the name of P. O. Broussard, and paid the taxes on the land out of the sale of stock belonging to the estate of P. O. Broussard, rendering an account of the balance of said sales to Emile Broussard. About the year 1891 Emile Broussard and Theophile Broussard were together in Jefferson county, Tex., and in what is known as the Hamshire settlement, where Derneuville Broussard, J. Burrell, and L. Hamshire lived. Some time about this period Theophile Broussard tried to sell his interest in his father's estate in Jefferson county to L. Hamshire, who refused to buy. Some time about the year 1881 there was some kind of adjustment or settlement between the brothers Theophile Broussard, Emile Broussard, and Derneuville Broussard as to some part of the estate of their father in Texas. The evidence leaves it in doubt as to exactly what matters were settled, but is sufficient to show that at that time some disposition or division was made of the stock and personal property. There is no evidence that any division was made of the land, or that any settlement was made with reference to the land. The evidence does show that the estate of P. O. Broussard in Louisiana was administered on, and that it was settled and divided among the heirs, and that Derneuville Broussard got his portion of his father's estate in Louisiana. The administration in Louisiana seems, so far as the evidence shows, to have taken no notice of the property situated in Texas.

That after about 1881 Emile Broussard ceased to look after the estate in Texas, and that about the year 1883 Derneuville Broussard instructed J. Burrell to render the land for taxes in his name, and that the land was so rendered for taxes in his name and the taxes paid by him, so far as they were paid at all, from the year 1883 to the year 1907; after the lands were rendered in the name of Derneuville Broussard, J. Burrell, under the instruction of Derneuville Broussard, continued to pay taxes on the lands out of the proceeds from the sale of the cattle on the range, which cattle were then claimed by D. Broussard, and that he accounted to D. Broussard for the balance of the proceeds of such cattle, and this course of dealing continued for many years. There was evidence that some time about the year 1881 there was a rumor in the neighborhood that Derneuville Broussard had brought the interest of Theophile Broussard, and that he had also in some manner acquired the interest of Emile Broussard. The evidence shows that from about the year 1881 Emile Broussard did no act showing a claim of title or ownership to the land in Texas prior to his death, which occurred in the year 1903, and that his heirs had made no such claim until this suit was filed. Theophile Broussard died December 15, 1881, and the evidence fails to show that he had asserted title to the land at any time, except by offering to sell his interest, as above stated, and that his heirs after his death took no steps with reference to this land, nor made any active claim thereto until this suit was filed.

Derneuville Broussard resided on the land in controversy with his wife until about the year 1893, his wife dying in that year. After her death he undertook to qualify as survivor in community of the estate of himself and his deceased wife, and caused to be prepared and signed an inventory, purporting to show the community property of himself and wife. This inventory, so far as material, was as follows:

"Inventory and appraisement of property, real and personal, belonging to D. Broussard and his deceased wife, Mary Broussard. Real estate, 125 acres of the W. H. Smith league valued at $125.00."

This inventory was never approved or filed, but was found among the papers in the probate court, and was shown to have been signed by D. Broussard.

The evidence showed that Derneuville Broussard was married some time prior to 1880, the exact date not shown. About the year 1893 or 1894, and evidently after the death of his wife, Derneuville Broussard employed an attorney to make a search of the records of the county to ascertain if he could find of record any instrument from any of his brothers and sisters conveying a transfer of their shares in his father's estate to him. He stated that he had purchased some such interest. The search was made, and no such instruments were found registered in the county. The lower court finds that it was a part of the family history that Derneuville Broussard had acquired some of the interest of his brothers or sisters in the early 80's but we find no satisfactory evidence of such fact in the record, there being nothing more than testimony that there were rumors to that effect. No statement by Emile Broussard or Theophile Broussard or any person claiming under them to that effect was shown to have been made, and there was no evidence that they or their heirs ever heard of any such history. On the contrary, some of the interveners testified that no such sale had occurred so far as they ever heard or knew.

The Court of Civil Appeals found that after the death of Theophile Broussard in 1881 and of Emile Broussard in 1903 none of their heirs ever asserted any claim or disputed the claim set up by Derneuville Broussard. This is true with the qualification that there was no evidence that either Theophile Broussard or Emile Broussard or their heirs ever heard or knew that any such claim had been set up. One of the daughters of Derneuville Broussard testified that her father had bought the interest of some of his brothers and sisters prior to her mother's death, but there was no testimony that he had bought the interest of either Emile or Theophile Broussard.

The evidence we think tends to show that the Broussard family in Louisiana were at least in reasonably good circumstances, and shows that the land in controversy in the year 1881 was worth only about 50 cents an acre. It further shows that Derneuville Broussard had little or no property prior to his marriage, and that his wife had a few cattle, and that he during his father's lifetime had resided with his family upon the land in controversy, and that after his father's death he continued to reside thereon. No question arose as to the ownership of this land until after the death of Derneuville Broussard and his two brothers, Emile and Theophile.

The evidence further shows that in the year 1894 Derneuville Broussard went to one Russell, an attorney at Beaumont, and stated that the land (referring to the land in controversy) belonged to some of his kindred, but that he had seen the parties in Louisiana and had paid them for their interest. He then mentioned the parties whose interest he had acquired. He further stated that he had bought them out and paid them before that, and that he wanted to take a deed to Louisiana and get them to sign and acknowledge it. He gave the attorney the names of the parties to put in the deed, and stated that he had purchased the interest of the parties named by him. He directed the attorney to recite in the deed the consideration as $50 paid to each of the grantors severally. This deed, which was obtained and appears in the record, was signed by his sisters Ezilda and Delzende Broussard and by various heirs of his deceased sisters, but the deed as prepared from the names furnished by him did not include either his brother Emile, he being then living, nor did it include the names of any of the heirs of his brother Theophile Broussard. Derneuville Broussard at the time said deed was prepared, although he then knew that there was no deed of record from his brothers, did not claim to the attorney that he had acquired the interest of his brothers, nor did he at that time undertake to obtain a deed from his brother Emile and the heirs of Theophile, although he knew that no such conveyance was of record.

The evidence further shows that one of the sisters of Derneuville Broussard about the year 1900 sold her interest in the land to one Gallier, and that he took possession of about 125 acres of the land and fenced it, and that his right to the land was recognized by Derneuville Broussard. In the year 1907 Derneuville Broussard, joined by all of his children, made a conveyance to the defendant R. S. Jackson of their interest in the land. This deed recited a consideration of $1,332 cash, and in the granting clause purported to convey "all the interest of the grantors in these certain lands situated in Jefferson county, Texas, described in a deed from Ezilda Broussard and others to said Derneuville Broussard recorded in vol. 11, page 510, of the deed records of Jefferson county, Texas, being part of the league of land granted to William H. Smith, and being 666 acres, more or less." The evidence tends to show that at the time of this sale the land was worth much more than the amount paid. The defendant R. S. Jackson, who purchased the land from Derneuville Broussard, taking the deed above referred to in the year 1907, did not testify in person on the trial. It appears that his ex parte depositions had been taken and a portion of these depositions were introduced by the plaintiff. In that portion

of his ex parte deposition introduced he stated that "he had required no affidavits of heirship at the time of the purchase and that Derneuville Broussard informed him that he had lived on the tract for several years." No explanation is furnished by the record as to why the defendant Jackson did not testify on the trial. He certainly knew whether or not Derneuville Broussard when he executed the deed to him claimed to be the owner of the entire tract of land, or, if not, what interest he at that time claimed to own. We think this important in view of the fact that the price paid was inadequate if Derneuville Broussard intended to convey to Jackson and Jackson intended to buy the entire tract of 666 acres.

From the facts above recited the trial court and the Court of Civil Appeals found that Emile and Theophile Broussard had about the year 1881 conveyed their interest in the land to Derneuville.

[2] We have found no case in this state where the presumption of the execution of a deed from one tenant in common to another has been indulged. Doubtless a case might occur in which such presumption would be authorized. The existence of the relationship of tenants in common robs the possession and use of the property by one of them of all probative force as against the other joint owners. The possession is lawful, and from it alone no inference of adverse claim arises, and therefore no inference of title as against the other joint owners.

These principles have been announced in numerous cases in Texas where title was asserted by limitation by one tenant in common as against the other tenants in common, and it is equally applicable where the presumption of a deed is sought to be proved by such possession and use. The Supreme Court of West Virginia, in a case involving this question, said:

"There can be no adverse claim or title, unless there is actual ouster and notice or knowledge of hostile claim brought home to the other party. Mere silent possession by one, no matter how long continued, does not destroy the right of another, unless there be ouster, or adverse claim with notice to the other of adverse claim. Justice v. Lawson, 46 W. Va. 163, 33 S. E. 102; Cochran v. Cochran, 55 W. Va. 178, 46 S. E. 924; Cooley v. Porter, 22 W. Va. 121; Boggess v. Meredith, 16 W. Va. 1. "'Where the possession of one is entirely consistent with title in another it cannot give rise to a presumption of a conveyance from the latter.' 22 Am. & Eng. Encyc. of Law (2d Ed.) 1290. "Ricard v. Williams, 7 Wheat. 59, 5 L. Ed. 598, says that this presumption can never arise 'where all the circumstances are perfectly consistent with the nonexistence of a grant.' As the possession of one joint tenant is consistent with that of another—is in fact his possession —the law raises no presumption that the other has conveyed his title to the one in possession."

Logan v. Ward, 58 W. Va. 375, 52 S. E. 401 (5 L. R. A. [N. S.] 156).

[3] Under this and other authorities which might be cited the evidence fails to show that Derneuville Broussard's possession of any part of the land was ever adverse to his brothers who owned the land with him as tenants in common. He owned an interest in it, had occupied it prior to his father's death, and afterwards continued to occupy it. There is in the record no proof that his brothers or their heirs ever had any knowledge or notice of an adverse claim by him. His possession as one of the tenants in common and the payment of taxes did not make his claim adverse, in the absence of knowledge or notice to the other joint owners. The mere fact that he was in possession as owner and may have claimed the land would not of itself be sufficient to show that he was claiming adversely to others who as tenants in common were also owners of the land. The evidence fails to show that he ever made an unequivocal statement to the effect that he had purchased his brothers' interest, although there were occasions where, if such purchase had occurred, he would naturally have stated that he had acquired such interest. The fact that he had the title investigated in 1894, and was informed that no conveyances appeared of record from any of his brothers or sisters, and that he then claimed to have purchased the interest inherited by some of his sisters, and then had a deed prepared to be signed by them, but made no claim to the interest of his brothers, is a strong circumstance tending to negative any such claim by him. When he discovered the condition of the record, if in fact he had purchased his brothers' interest, we think that he would, when attempting to clear up his title, have then made some effort to obtain from his brother Emile, who was then living, and from the heirs of his brother Theophile, some kind of conveyance or acknowledgment of his title.

When Derneuville Broussard and his children sold to Jackson and made a deed conveying their interest in the land they did not, so far as the record shows, assert title or purport to convey the entire tract or any specific interest therein, but only their interest in it, whatever that interest might be. The evidence tends to show that this land was then worth about $5 per acre, and Jackson only paid $1,332. The price paid tends to show that Jackson did not purchase, and that Derneuville Broussard and his children did not intend to convey, the entire tract of land, but an interest in same much less than the whole.

The fact that Jackson did not testify as to the transaction by which he acquired the land and the negotiations preceding the purchase and as to what interest was intend-

ed to be conveyed, coupled with the meager statement from his ex parte deposition that Derneuville Broussard told him that he had lived on the land for a number of years, leads almost irresistibly to the conclusion that Derneuville Broussard did not sell or intend to convey the entire tract, but only such interest as appeared from the record to be owned by him.

As the execution of a deed or deeds is sought to be established by circumstantial evidence, all the circumstances must be considered, and they must at least render it probable that such deeds were executed.

If any such deeds were executed or if Derneuville Broussard had in any manner acquired the title of his brothers, he knew it, and we would naturally expect that when he discovered that he had no record title and undertook to cure the defects that he would have procured, or attempted to procure, from his brother Emile Broussard, who was living, a confirmation deed, and also some evidence of title from the heirs of his brother Theophile.

Again, we think that when the land was purchased by Jackson that the question of title and the extent of Derneuville Broussard's ownership would naturally arise, and we would reasonably expect that at that time, if in fact conveyances had been made, some effort would be made to cure the defect in title apparent of record by procuring conveyances from the heirs of Emile and Theophile Broussard.

The inventory made by Derneuville Broussard after the death of his wife amounted to a statement by him that the community estate owned 125 acres in the Smith league. We are unable to see how it can be construed as the assertion that the community owned 250 acres, but, if so construed, it is clearly accounted for by reason of the fact testified to by various witnesses that he claimed to have acquired the interest inherited by some of his sisters. We can see no reason why this inventory should be explained on the theory that he had acquired the interest of his brothers which he never claimed to have done, rather than upon the theory that he had acquired the interest of some of his sisters which he had claimed to have done.

[4] The rumors referred to in the findings of fact, in our opinion, are entitled to no weight. Neither general reputation nor rumor could be given any weight, unless the matter was of such general notoriety as to raise a presumption that the parties sought to be affected by them knew of such rumor or reputation.

We think that, considering the small value of the land and the pecuniary condition of Derneuville Broussard, as disclosed by the record, and the apparent comfortable circumstances of his relatives, that his possession and limited use of the land can more reasonably be attributed to the indulgence of his kindred than to the presumption of a deed.

There is not, we believe, one single circumstance disclosed by the record that cannot be reasonably explained otherwise than by the presumption of a deed, while many circumstances appear to be entirely inconsistent with the theory that Emile and Theophile Broussard had conveyed their interest in this land to Derneuville Broussard.

We therefore are constrained to conclude that there is no evidence in this record authorizing a finding that Derneuville Broussard ever acquired the interest of his brothers Emile and Theophile Broussard.

[5] The second question is, we think, settled by the decisions of the Supreme Court of this state. The deed under which it is claimed the title of the heirs of Emerente Broussard passed in the granting clause showed Emerente Broussard as one of the grantors. She at that time was dead, and the deed was signed and acknowledged by various persons shown by the evidence to be her heirs. The Court of Civil Appeals held that this deed did not pass the title of the heirs. We think this conclusion correct. There was nothing in the deed itself to identify the parties who signed as grantors, or to identify them as the heirs of Emerente Broussard, whose name appears in the granting clause. This relationship, and the intention to convey as heirs, did not appear from the instrument, but, if at all, from parol evidence. Under the decisions of this state we think the deed did not pass the interest inherited by the heirs. Stone v. Sledge, 87 Tex. 52, 26 S. W. 1068, 47 Am. St. Rep. 65; Agricultural Bank v. Rice, 4 How. 225, 11 L. Ed. 949.

[6] The Court of Civil Appeals we think properly held that the deed, signed "Celema Broussard, per Sevenne Le Blanc, Curator," did not pass the title of Celema Broussard. In addition to the facts stated by the Court of Civil Appeals we call attention to the fact that the acknowledgment recites that "Celema Broussard, by Sevenne Le Blanc, Curator," appeared before the notary and acknowledged the execution of the deed. We think that from the whole instrument it appears that same was executed, not by Celema Broussard, but for her by her curator, and in the absence of evidence showing the authority of the curator no title passed.

[7] The only other question involves a controversy between the plaintiffs Ellen Craigen and Odelia Carouthers and the defendant R. S. Jackson. We are confronted with this situation: There was proof that P. O. Broussard was the common source, and that Derneuville Broussard inherited one-eighth of the land, and had acquired certain interest from his sisters and their descendants. The plaintiffs after making this proof offered in evidence the deed from Derneuville Brous-

sard and his children to R. S. Jackson for the purpose of showing common source, and for no other purpose. This deed, so far as the record shows, was not introduced by Jackson for the purpose of showing title.

Article 7749 of the Revised Statutes provides that the plaintiff may offer in evidence deeds for the purpose of showing common source only, and that such deeds shall not be evidence of title in the defendant unless offered in evidence by him. So in this case the defendant is without any evidence of title whatever. This is a statutory rule, and we think founded on good reason. We do not feel authorized to disregard it. The plaintiffs having shown that they have an undivided interest in the land, however small, in the state of this record were entitled to recover as against the defendant Jackson all of the land.

This condition of the record requires a reversal of the judgment as between the plaintiff and the defendant Jackson. But for the fact that this situation is perhaps the result of an oversight either in the introduction of the evidence or preparation of the record, we would be disposed to here render judgment for the plaintiff, but as it appears from the entire record that Jackson owns an interest in the land, we think that in the interest of justice the cause should be remanded for a new trial as between the plaintiffs and the defendant Jackson.

[8] In view of another trial between the plaintiffs and the defendant, we will say that the evidence tends strongly to show that the interest acquired by Derneuville Broussard under the deed from Delzende Broussard and others, executed after the death of Derneuville Broussard's wife, was in fact contracted for before the death of the wife, and probably paid for in whole or in part from community funds. If it should be so determined, then the land so contracted and paid for prior to the death of Mrs. Broussard would in equity be community property to the extent that community funds were used in its purchase. The burden of proof to show the community interest and its extent is upon the plaintiffs, as presumptively having been acquired by deed after the death of the wife, it was the separate property of the husband. Johnson v. Newman, 43 Tex. 640. We think it also incumbent on the plaintiffs, who assert an equitable title, to show that Jackson had notice of the equity of the plaintiffs at or prior to the time of its purchase.

We do not think that knowledge on the part of Jackson that Derneuville Broussard had been married, and that plaintiffs were children of his wife, would be sufficient, but that in some way notice must be brought home to Jackson that the lands were purchased and paid for either in whole or in part with community funds. Pouncey v. May, 76 Tex. 565.

We recommend that the judgment of the Court of Civil Appeals awarding Alodie Broussard Le Blanc a judgment against the plaintiffs and against the defendants and all other parties to the suit for an undivided one forty-eighth interest in the land be affirmed; that the judgment of the Court of Civil Appeals awarding Adam Thibedeaux and Aurelia Thibedeaux a judgment against the plaintiffs and the defendants and all the other parties to the suit for one forty-eighth undivided interest in the land in controversy be affirmed; that the judgment of the trial court and the Court of Civil Appeals denying the heirs of Emile and Theophile Broussard any recovery be reversed, and judgment here rendered in favor of said heirs and against all the other parties to the suit for an undivided one-fourth interest in the land in controversy; that the judgment of the trial court in favor of the heirs of Emerente Broussard be affirmed; that the judgment rendered by the trial court and by the Court of Civil Appeals in favor of the plaintiffs be reversed; and that the case be remanded for a new trial between the plaintiffs Ellen Craigen and Odelia Carouthers, joined by her husband, and the defendant Jackson; that all the interveners for whom judgment is hereinbefore rendered recover against the plaintiffs and the defendant Jackson all cost, and that as between the plaintiffs and the defendant Jackson the plaintiffs recover all costs of the Court of Civil Appeals and the Supreme Court.

PHILLIPS, C. J. The judgment recommended by the Commission is adopted and will be entered as the judgment of the Supreme Court except in so far as it recommends that judgment be here rendered in favor of the heirs of Emile and Theophile Broussard against all parties to the suit for an undivided one-fourth interest in the land. The judgment of the trial court and of the Court of Civil Appeals denying these heirs recovery for their interest will be reversed, but instead of judgment being rendered in their favor for such interest, the cause, as to their right of recovery, will be remanded to the District Court. We approve the holding of the Commission on the questions discussed.