# CHARLESTON

## SWICK v. REASE.

Submitted June 17, 1907.    Decided November 12, 1907.

| 62 | 557 |
| f63 | 497 |

| 62 | 557 |
| 65 | 124 |

1.  QUIETING TITLE—*When Suit Maintainable.*
      Where removal of cloud from title is merely incidental to the primary relief sought, or the plaintiff has no remedy at law, neither legal title nor possession is necessary to maintain his suit. (p. 559.)

2.  TRUSTS—*Frauds, Statute Of.*
      The statute of frauds has no application to trusts in this State. (p. 560.)

3.  SAME—*Evidence to Establish.*
      In a chancery suit instituted for that purpose land of H. is decreed to be sold to satisfy a judgment held by S. Shortly after entry of the decree, S. by written agreement with H. becomes owner and assumes possesssion of the land. Subsequently, upon advertisement for sale by the commissioner appointed, R. enters into a verbal agreement with S. and the commissioner to buy in the land for S. at a sum sufficient merely to cover costs and expenses of sale, and upon repayment to him by S. of such purchase money, to convey the land to S. R. bids in the land, pays the agreed price and obtains from the commissioner conveyance of the legal title. *Held*, the relation of trustee and *cestui que trust* is thus created between R. and S., and any purchaser from R. with notice thereof must account to the holder of the equitable title. (p. 560.)

Appeal from Circuit Court, Barbour County.

Bill by F. L. Swick against F. P. Rease and others. Decree for plaintiff, and Rease appeals.

                         *Affirmed.    Remanded.*

WARE & VIQUESNEY, for appellant.

WM. T. GEORGE, for appellee.

MILLER, PRESIDENT:

The bill of complaint, the demurrer of the appellant to which was overruled, is substantially that the plaintiff, after the recovery of a judgment by his firm of Baker & Swick against one Himes, acquired title thereto by assignment from his partner; that in a subsequent suit in chancery instituted

for that purpose certain deeds made by Himes were set aside as fraudulent as against said judgment, by a decree of 1889 which appointed C. F. Teter commissioner to make sale of 10 acres of land owned by Himes to satisfy said judgment; that in 1890, before sale under said decree, by a written contract with Himes the plaintiff, in consideration of said judgment, became the owner of said land and assumed and has since held possession thereof, farming it and enjoying the rents and profits; that in 1893 he conveyed to the defendant railroad company a right of way for its railroad through said land, which was immediately built and put in operation; that when commissioner Teter advertised said land to be sold in satisfaction of the plaintiff's debt in May, 1897, he explained to said commissioner that he had sold said right of way and that he was not financially able to purchase said land, when the commissioner suggested that, inasmuch as the residue after payment of costs and expenses of sale would be due to the plaintiff, he could induce the defendant Rease, who was superintendent of the railroad company, to purchase the land for the plaintiff at a nominal sum; that pursuant to such suggestion the commissioner wrote and sent by plaintiff a note to Rease concerning the matter, which being delivered to and read by Rease the latter entered into a verbal agreement with plaintiff to attend the sale and bid in the land for him and, as soon as the plaintiff should repay him the purchase money, to convey it to him; that pursuant to said verbal agreement Rease attended the sale and purchased the land at $95, the amount of costs and expenses of sale and a small fee due Teter as attorney; that a few months thereafter plaintiff paid Rease on account of the purchase $17.55; that in different conversations concerning said purchase, Rease always told plaintiff that whenever he should pay him the balance of the purchase money he would make him a deed for the land; that, thinking Rease was in no hurry about the money, he did not go to make final settlement and obtain his deed until the summer of 1902, when he was surprised to learn from Rease that he had grown tired of waiting and had conveyed the land to the defendant company on March 21, 1902; that Rease refused, when then requested, to receive the money tendered and to execute a deed to the plaintiff; that Rease was the agent and general manager of the

railroad company who purchased the right of way through said land and held that position at the time of his agreement with plaintiff; that he fully trusted said Rease and relied on him to carry out his agreement; that, had he been informed or advised Rease would not have carried out his contract, he would have made other arrangements to protect himself and his debt against said land, then amounting to nearly $200; that he is ready and willing to fully reimburse the said Rease. He prays that the deed from Rease to the railroad company be annulled as a cloud upon his title, that the title be decreed to be in him, that upon payment of the balance of the purchase money conveyance be made to him, and for general relief.

The sufficiency of the bill is challenged upon two grounds: first, that the plaintiff does not allege legal title or possession; second, that the bill can not be sustained to impress upon the legal title a trust in favor of the plaintiff, because it is not alleged that the plaintiff invested any money in the purchase, nor that he took possession pursuant to the alleged agreement with Rease, and because the part payment alleged is not sufficient to avoid the statute of frauds.

A suit for removal of cloud is one purely of equitable cognizance. There is great conflict of authority as to whether one with purely equitable title may maintain a bill for this relief alone. 6 Pom. Eq. section 730. This writer says: "The better opinion appears to be that the proposition that only the owner of the legal title can remove a cloud is not only not sustainable upon authority, but is not supported by the reason which lies at the basis of such actions. That reason is that the party has no adequate remedy at law, and that to require him to await the action of the party claiming under the instrument or other matter constituting the cloud, until perhaps his evidence and ability to defend against it is lost by lapse of time, would, in many cases, be to deny him any remedy. The reason is as forcible in the case of one holding an equitable estate or merely a lien, as in that of the legal owner." See also 4 Pom. 1399. The rule of the federal court is that only one with legal title can maintain a bill simply to remove cloud. *Smith* v. *Orton*, 21 How. 241; *Frost* v. *Spitley*, 121 U. S. 552; *Whitehead* v. *Shattuck*, 138

U. S. 156; *Sharon* v. *Tucker*, 144 U. S. 543. Our own decisions also adhere to this view.    *Hitchcox* v. *Morrison*, 47 W. Va. 206; *Moore* v. *McNutt*, 41 W. Va. 695; *Davis* v. *Settle*, 43 W. Va. 17; *Smith* v. *O'Keef*, 43 W. Va. 172.    But it is nevertheless a rule of these and other cases that where the plaintiff, either in or out of possession, has some equitable right not redressable in a court of law, and removal of cloud is only incidental to the primary relief sought, the bill may be maintained; and where the plaintiff's title is an equitable one possession by him is not necessary.    Hogg Eq. Prin. 84; *Moore* v. *McNutt, supra; De Camp* v. *Carnahan*, 26 W. Va. 839; *Mason* v. *Black*, 87 Mo. 329; *Ins. Co.* v. *Smith*, 117 Mo. 261; *Sneathen* v. *Sneathen*, 104 Mo. 201; *Mathews* v. *Marks*, 44 Ark. 436; *Sloan* v. *Sloan*, 25 Fla. 53; *Freeman* v. *Brown*, 96 Ala. 301.    The second ground of demurrer assumes that the verbal contract alleged is executory and, being made after deed by the commissioner to the appellant, is not enforcible; and he relies upon the cases of *Currence* v. *Ward*, 43 W. Va. 368, *Wood* v. *Ward*, 48 W. Va. 653, and like cases.    But the contract alleged is not of that character. The contract set forth in the bill was made before sale and deed, and puts the appellant in the relation of trustee to buy in the property at the judicial sale for Swick, under such circumstances of trust and confidence as to preclude him from asserting adverse title in this suit.    1 Perry on Trusts, section 171; 6 Pom. Eq., section 830; *Camden* v. *Dewing*, 47 W. Va. 310; *Potts* v. *Fitch*, 47 W. Va. 63; *Glass* v. *Hulbert*, 102 Mass. 35.    The statute of frauds has no application. *Camden* v. *Dewing, supra;* 2 Washb. on Real Prop., sec-1430; *Currence* v. *Ward, supra; Hamilton* v. *McKinney*, 52 W. Va. 317; Hogg. Eq. Prin., section 553; 2 Minor Inst. 188, 568; *Bank* v. *Carrington*, 7 Leigh 566.    The demurrer was properly overruled.

The railroad company made no appearance; as to it the decree was upon bill taken for confessed.    Rease alone answered.    By his answer he puts in issue the fact of the agreement alleged between plaintiff and him, and denies that prior to the sale he received a note from the commissioner requesting that he buy in the land for Swick.    He admits having received a letter from the commissioner, but denies it was of the purport alleged in the bill, but does not pre-

tend to state what its purport was. He represents that Teter, who he says was counsel for the railroad company, informed him the land was to be sold and he had better purchase it to protect the railroad company; that he then arranged with the commissioner to and did put in a bid for and purchased the property for the company with its funds. On the question of the fact of the contract alleged, we think the evidence supports the bill. The plaintiff's testimony is positive; and the commissioner, who was attorney for the plaintiff and had been attorney for the railroad company, not only corroborates the plaintiff as to the fact that a letter was written by him to Rease prior to the sale, but gives it as his understanding that the land was bought in for Swick for a sum sufficient to cover simply the costs and expenses of sale. Rease admits an arrangement by which Swick was to redeem the land, but refers it to a time subsequent to his purchase. He admits having given Swick his receipt for $17.55 on account, but says in his evidence this was by way of part repayment of the $75 paid Swick by the railroad company for right of way. However, he says if Swick had taken the land and paid for it the $17.55 would have been credited on the purchase money. He also admits that, upon receipt of a letter from Swick asking for settlement, he had his attorney write Swick threatening prosecution for having sold a right of way through land to which he did not have title—a position rather inconsistent with his admission of a contract with Swick to convey him the land on repayment of the purchase money. The fact that this land was sold in a suit to pay a debt of Swick, and that Rease bought it in through Teter for Swick and the railroad company at a nominal price to cover costs and expenses of sale, and other corroborative facts and circumstances inconsistent with Rease's defense, in our opinion justify the decree appealed from, and upon well recognized rules of practice in this Court we would not be justified in reversal. Upon the principles of the authorities cited on the demurrer, we are of the opinion that the pleadings and proof establish, as between the plaintiff and Rease in the purchase of the land, the relationship of trustee and *cestui que trust*, of which relationship the railroad company at the time of the deed from Rease to it was charged with notice. As purchaser from

Rease, its superintendent and general manager, the railroad company itself became trustee for the beneficiary with respect to the property, and is bound in the same manner as the original trustee. 2 Pom. Eq., section 688. Charged with notice, the taking of the legal estate from its agent makes it a *mala fide* purchaser, so as to call upon it to account to the rightful owner. 2 Pom. Eq., section 591. We are therefore of opinion to affirm the decree of the circuit court.

*Affirmed.*