# CHARLESTON

## BLAKE v. O'NEAL.

Submitted January 15, 1908.    Decided February 4, 1908.

63    483
65    124

1. TRUSTS—*Deed—Construction—Conveyance in Trust—Descent and Distribution.*

   As a matter of intention, ascertained by application of the rules of interpretation and construction, rather than as matter of law, a deed by which land is granted, bargained and sold, in fee simple, to one person for the use of another, separates the legal from the equitable title in fee simple, and vests the former in the trustee and the latter in the *cestui que trust*, and each is then governed by the laws of descent. and, on the death of the party in whom it is vested, goes to his heirs. (p. 486.)

2. SAME—*Execution in Beneficiary.*

   Such a deed creates a trust, which is not, by our statute of uses, nor any principle of common law, executed in the *cestui que trust*. (p. 489.)

3. SAME—*Statute of Uses.*

   The English statute of uses, 27 Henry VIII, chapter 10, was not in force in the state of Virginia after the year 1792, and has never been adopted in any form, as part of the law of this State. (p. 490.)

4. SAME.

   The statute of uses of this State, section 14 of chapter 71 of the Code, executes only uses created by deeds of bargain and sale, deeds of lease. and release, covenants to stand seized, or covenants operating as covenants to stand seized. Hence, it has no application to uses created by will or instruments other than those mentioned therein. (p. 490.)

5. SAME—*Legal Title.*

As between the grantor and the trustee, a deed granting, bargaining and selling land to a trustee for the use of a third person, vests the legal title in the trustee, under the statute of grants, independently of the statute of uses.   (p. 492.)

6. VENDOR AND PURCHASER—*Possession of Grantor—Acquisition of Adverse Title.*

If the grantor in a deed, containing a covenant of general warranty, conveying away the title in fee simple, remain in possession after the execution thereof, he is presumptively the tenant of the grantee, and cannot set up an independent title in himself. without having shown some act of ouster of his landlord, or the equivalent thereof.   (p. 496.)

7. SAME—*Estoppel.*

The grantor so remaining in possession cannot set up title as against the grantee or his heirs by adverse possession, if, by his deed, he has warranted generally the.title to the land. Such covenant passes, to the covenantee, by estoppel, a pre-existing outstanding title, subsequently acquired by the covenantor.   (p. 496.)

8. TRUSTS—*Breach of Duty by Person in Fiduciary Capacity—Redemption from Taxation—Effect.*

A tenant or.agent whose duty it was to pay the taxes on land, and who, neglecting to do so, allowed it to become delinquent for non-payment of taxes and to be sold to the state at a sheriff's sale, and, in a suit by the state, to sell the same for the benefit of the school fund, redeemed it in his own name, took such title as he thereby acquired from the state in trust for the benefit of his landlord or principal.   (p. 495.)

9. JUDGMENT—*Res Judicata.* ·

A decree ordering the sale, or permitting the redemption, of land, in a suit brought under chapter 102 of the Code, to sell forfeited lands for the benefit of the school fund, is not binding upon persons who were not, in any form, made parties thereto.   (p. 495.)

10. TAXATION—*Forfeiture—Non-entry for·Taxation.*

Taxation of land in the name of a former owner prevents forfeiture of the title thereto, for non-entry thereof for taxation, as to the owner of the title under which the same was· so taxed.   (p. 496.)

11. TRUSTS—*Enforcement—Conveyance of Legal Title.*

The owner of an equitable title, having the right to call in the legal title, will be entertained in a court of equity, to compel the conveyance of the legal title to him, and cancel invalid instruments constituting clouds thereon, although, the trust being dry, he might maintain ejectment on the presumption that the legal title had been conveyed to him, or the rule that a stranger cannot maintain his possession against superior title on mere defects in the claim of the opposite party to the ownership of such title.   (p. 497.)

12. SAME—*Quieting Title.*

The primary object of such a bill is the vindication of the equitable title, not the removal of a cloud from the legal title, and the rule, requiring possession, on the part of a plaintiff in a bill to remove cloud from title, has no application.  (p. 497.)

Appeal from Circuit Court, Fayette County.

Bill by C. T. Blake and others against Sue O'Neal and others.   Decree for defendants, and plaintiffs appeal.

*Reversed.   Remanded.*

PAYNE & HAMILTON and HUBARD & LEE, for appellants.

DILLON & NUCKOLLS, for appellees.

POFFENBARGER, PRESIDENT:

The circuit court of Fayette county having denied equity jurisdiction of this cause, by dismissal of the bill on final hearing, the appeal therefrom raises a number of important and somewhat difficult questions of both substantive law and practice.

Being out of possessession and regarding the legal title as outstanding in the heirs of a deceased trustee, the plaintiffs below, C. T. Blake and others, heirs at law of Martha Blake, deceased, instituted this suit against Sue O'Neal, Emma Goode and L. M. Woolwine, heirs of M. E. Woolwine, the dead trustee, the Dillon Coal and Land Company, corporation, claiming to be the owner of the land, and Lewis Blake and E. B. Hawkins, the remote and immediate grantors, respectively, of the Dillon Coal and Land Company. The relief specifically asked is conveyance of the legal title to the plaintiffs and cancellation of two deeds, hereinafter mentioned, under which the Dillon Coal and Land Company claims.

The facts material upon the inquiry as to jurisdiction are as follows:   The defendant Lewis Blake, father of the plaintiffs below, being the owner of sixty-eight acres of land, by deed, dated August 10, 1875, did, for and in consideration of five dollars, "grant, bargain and sell" the land unto "M. E. Woolwine, trustee for" Martha Blake, the wife of the grantor and mother of the plaintiffs.   Thereafter he remained in possession of the land untill after the death of his wife, the maturity in age of his children by her and their departure from the paternal roof to find homes for themselves, and the

rearing of another set of children by his second wife. On the 12th day of February, 1902, he and his second wife executed a deed, purporting to convey the land to E. B. Hawkins, who, on the first day of May, 1902, executed a deed therefor to the Dillon Coal and Land Company. On the death of Lewis Blake, the suit was revived against his heirs. Martha Blake, the first wife died October 27, 1887. The death of the trustee occurred before that of Mrs. Blake.

In the argument of counsel for the appellee, adequacy of the remedy at law and consequent want of jurisdiction in equity are predicated principally upon two propositions: first, that the trustee took, by the deed, the legal title only for the natural life of the *cestui que trust;* and second, that, although he took the legal title in fee simple, it was transferred to, and vested in, the *cestui que trust* by the statute of uses, and descended, on the death of Marth Blake, to her heirs, along with the equitable title; so that, in either case, the plaintiffs, having the legal title, may bring ejectment and have no occasion to come into equity for relief.

That a trustee takes the legal title in such quantity as is necessary to the performance of the duties imposed upon him, when the trust is active, and co-extensive with the equitable estate vested in the *cestui que trust*, when it is passive, and no more, is a proposition very generally recognized and received by the courts; but, the application thereof is limited to those cases in which the instrument, fairly interpreted, discloses such intention. It probably has more extensive application in cases involving the construction of wills than in any others; but, in many instances, it obtains in construction of deeds. For instance, if land be devised or granted to one person for the use of another for and during the natural life of the latter, without more, it may well be said that, fairly construed, the instrument creates only a life estate in the trustee, leaving the remainder, as to both the legal and equitable interests, in the grantor or the heirs of the testator; for an intention, on the part of the grantor or testator, to separate the legal title in remainder from the equitable title in remainder, would be unreasonable. The limitation of the beneficial interest in point of duration to the life of the *cestui que trust* shows a particular intention which limits and restricts the general terms in which the grant or devise to the trustee is

clothed. Viewed as a whole, the instrument creates a life estate in the beneficiary and a corresponding life estate in the trustee. Thus, in *Doe* v. *Ponsidine*, 6 Wall. (U. S.) 458, the Supreme Court of the United States said: "Though a devise to trustees 'and their heirs,' passes, as a general thing, the fee, yet where the purposes of a trust and the power and duties of the trustees are limited to objects terminating with lives in being,—where the duties of the trustee are wholly passive, and the trust is perfectly dry,—the trust estate may be considered as terminating on the efflux of the lives. The language used in creating the estate will be limited to the purposes of its creation." The intention to create only life estates in both the trustee and the *cestui que trust* having been so ascertained, it necessarily followed that, upon the death of the *cestui que trust*, the life tenant, the legal title in remainder was not separated from the equitable title in remainder. If given over to another party, the complete title in remainder, legal and equitable, was given over, not by force of law, but by the intention of the testator. If it was undisposed of by the will, it remained in the testator until his death and decended to his heirs. Precisely the same conclusion was declared in *Young* v. *Bradley*, 101 U. S. 782, under the operation of the same principle. In the former case, Mr. Justice Swayne, delivering the opinion of the court, said: "This doctrine rests upon a solid foundation of reason and authority, irrespective of the presence or absence of the statute of uses. The consequences in this case of the absence of such a statute in Ohio, it is therefore not necessary to consider." The question involved was, not whether the statute of uses transferred the possession to the equitable life tenant, nor whether the legal title in the trustee, after the expiration of the equitable life tenancy was transferred to, and vested in, the beneficiaries of a use in remainder, but, on the contrary, whether it was intended that the trustee should have any legal title after the termination of the life estate. That it was not so intended was inferred from the limitation of the equitable title to the life of the beneficiary. Some of the authorities relied upon to sustain the position that although this deed grants the fee simple equitable title to the wife and apparently the fee simple legal title to the trustee, the trust ceased on the death of the wife, and both

the legal and equitable title descended to her heirs, were governed by the English statute of uses, or fell under the operation of the rule stated in *Doe* v. *Considine* and *Young* v. *Bradley*. It is perfectly obvious that the two federal decisions mentioned are not applicable, and it will be made equally clear, on an examination of our statute of uses, that the others have no application. In *Dodson* v. *Ball*, 60 Pa. St. 492, the English statute of uses was applied, for other decisions of the Pennsylvania court treated that statute as operative in the state of Pennsylvania. Thus, in *Steacy* v. *Rice*, 27 Pa. St. 75. the court, in its opinion, applied that statute, and, in the syllabus, said: "The trustee took the legal title for the use of the daughter for life, and for the heirs afterwards, but being a mere dry trust for the heirs, the remainder was executed in them as a legal estate under the statute of uses." That the English statute of uses, 27 Henry VIII, is the staute referred to, is made apparent by the citation of numerous authorities illustrating the application thereof. While the statute of uses is not mentioned in *Dodson* v. *Ball*, we must assume that the court, in that case, applied the principles of former decisions. *Nightingale* v. *Nightingale*, 13 R. I. 113, was, in all material respects, like that of *Dodson* v. *Ball*, as to its facts, but it treated the legal title as outstanding in the heirs of the trustee. It was a suit in equity by the heirs of the equitable owner to compel a conveyance of the legal title to them. *Bush's Appeal*, 33 Pa. St. 85, involved personal property only and the construction of a will, and it was ascertained that the testator intended the trust to exist only during the life estate. *Sutton* v. *Aiken. Trustee*, 62 Ga. 533, is governed by a statute which provides as follows: "In an executed trust for the benefit of a person capable of taking and managing property in his own right, the legal title is merged immediately into the equitable interest, and the perfect title rests in the beneficiary according to the terms and limitations of the trust." Hence, the Georgia cases relied upon have no application. *Lines* v. *Darden*, 5 Fla. 51. follows a Georgia case, and so evidently treats the English statute of uses, or its equivalent, as operative in that state. *Richardson* v. *Stodder*, 100 Mass. 528, expressly applies that statute. So does *Schaffer* v. *Lavretta*, 57 Ala. 14, and *Bryan* v. *Bradley*, 16 Conn. 474. and *Guest*

v. *Farley*, 19 Mo. 148. The Kentucky decisions relied upon seem to regard the legal title as outstanding in cases of passive trusts. *Woolley* v. *Preston*, 82 Ky. 415, a case involving a deed, conveying certain estate to trustees to pay debts, with power to sell, mortgage, &c., and, after payment of the debts, to divide the residue between the children of the grantor, holds as follows: "After the debts of the testatrix were paid, the power of the trustees over the property expired and the children had the right at any time thereafter to compel them to the legal title without reservation." The Vermont cases, *Sherman* v. *Dodge*, 28 Vt. 26, and *Gorham* v. *Daniels*, 23 Vt. 600, declaring 27 Henry VIII never to have been adopted in that state as part of its common law or otherwise, do not seem to involve the question under consideration here at all, since in each of them the conveyance was regarded as defective and equity interposed to perfect them, as in the case of executory contracts of sale, covenants to stand seized where there is no statute to execute them and the like. These cases argue the exact contrary of the proposition for which they are cited. They say that, neither by the statute of uses nor the comon law of that state, is a use or trust in land executed, and that such rights are enforcible only in equity. In the cases of deeds of trust to secure debts and protect estates for life, and similar conveyances, no difficulty is found in arriving at the conclusion that there was intention to grant to the trustee the legal title for such time only as to enable him to perform the duties imposed upon him by the instrument, although the terms of the grant are general; for, in such cases, as well as in those of devises to trustees for similar purposes, both the legal and the equitable titles in remainder may consistently with the terms of the instrument, fairly construed, go over to a third party, or stand vested in the grantor or testator and descend to his heirs. But when the equitable estate in fee simple is granted or devised to one person and the entire legal title to another, the terms, purposes and objects of the instrument, aided by the situation and circumstances, afford no ground on which to base such a conclusion. The whole estate, legal and equitable, passes out of the grantor, and there is no person other than the trustee in whom it can vest; for, on the death of the trustee, it cannot pass to the *cestui que trust* consistently with the terms of the

instrument, nor, on the death of the latter, to his heirs since they take by descent only such estate as the ancestor had, the equitable estate in fee simple, and not at all from the trustee. If he be dead, they may not be his heirs, and, if living, he has no heirs. The only intelligent and consistent view, under such circumstances, is that the legal title is vested in the trustee, for the law allows it and the grantor intended it. The death of the trustee does not end the trust. *Morgan* v. *Morgan*, 60 W. Va. 327; *Witter* v. *Dudley*, 36 Ala. 135; *Dyer* v. *Leach*, 91 Cal. 191. On the death of the trustee the legal title descends to his heirs. *Morgan* v. *Morgan*, cited; 28 Am. & Eng. Ency. Law 938-9.

That the English statute of uses, 27 Henry VIII, is not in force in this State, utterly demolishes a large part of the argument of counsel for appellees. It was a part of the law of Virginia until December 27, 1792, when there was a general repeal of all British statutes in the state. 1 Lomax Dig. 219, mar. p. 188. A substitute for it is found in First Revised Code, chapter 99, section 29, which is substantially the same as section 14 of chapter 71 of our Code, providing as follows: "By deed of bargain and sale, or by deeds of lease and release, or by covenant to stand seized to the use, or deed operating by way of covenant to stand seized to the use, the possession of the bargainor, releasor or covenantor shall be deemed transferred to the bargainee, releasee or person entitled to the use, for the estate or interest which such person has in the use, as perfectly as if the bargainee, releasee or person entitled to the use, had been *enfeoffed* with livery of seizin of the land intended to be conveyed by such deed or covenant." It is to be observed that this statute transfers the possession (the title) in only three classes of cases, deeds of bargain and sale, deeds of lease and release, and covenants to stand seized to the use. 27 Henry VIII was much broader, providing as follows: "That when any person shall be seized of lands, &c., to the use, confidence or trust of any other person or body politic, the person or corporation entitled to the use in fee simple, fee tail for life, or years, or otherwise, shall from thenceforth stand and be seized or possessed of the land, &c. of and in the like estates as they have in the use, trust or confidence; and that the estate of the person so seized to uses, shall be deemed to be in him or them that have

the use, in such quality, manner, form, and condition, as he had before in the use." It will be noticed that this statute executed all uses and all trusts, no matter how created. It was immaterial whether the use or trust was created by a will or deed. Our statute makes no reference whatever to uses created by will and it has been decided that a use in land created by will is not executed by it. *Bass* v. *Scott*, 2 Leigh. 359. Neither does it execute trusts, for trusts are not mentioned in it by name, and, if there is a trust, in the view of a court of equity, in the case of a deed of bargain and sale, or a deed of lease and release or a covenant to stand seized, such trusts, trusts created in that way, are the only trusts to which the statute makes any express reference. In both Lomax's Digest and 2 Minor's Institutes, it is said that our statute embraces no species of conveyance other than those mentioned in it. The former, at page 219, mar. pp. 188-189, says: "This provision in terms only executes the seizin to the use in the cases which are there specified. Not, as in the statute of Henry VIII, whosoever any person should stand seized to the use of any other person. So striking a departure from the terms of the latter statute, which had always been and then was the law of Virginia, manifests conclusively, it would seem, a disposition to make the change in the law which its language imports. There is, moreover, strong internal evidence in the words of the section which have been cited, that the only purpose of the legislature was to execute the possession to the use of the bargainee, in the case of a deed of bargain and sale; or in the release, (or rather the lessee,) in the case of deeds of lease and release; or in the case of a covenant to stand seized to use, to execute the possession to the use in the person entitled to the use, for the estate or interest which such person has in the use. To give to the words of this act a meaning co-extensive with the English statute, so as to include every case where there may be found a seizin in one person and a use in another, seems to be unwarranted by any rule of statutory interpretation, nor is there apparent any principle of policy so imperious as to require so free a construction of plain, unambiguous language." At page 183 of Minor's Institutes, Vol. II, this declaration is made as to its scope and effect: "It is applicable to those only which operate without transmutation of

possession, namely, bargain and sale, and covenant to stand seized, for although two others are also named, that is lease and release, and deed operating by way of covenant to stand seized, yet the latter manifestly does not constitute a distinct class, and the lease and release are no more than a lease by bargain and sale for a term, say year, and a release operating as at common law, by way of enlargement." At page 186 of the same volume, in enumerating the cases not within 27 Henry VIII, nor within the Virginia statute of uses, Professor Minor says: "And in Virginia, (4), Uses declared by any other conveyance than a bargain and sale, covenant to stand seized, or lease and release." At page 187, he says: "A use limited upon a devise by will (e. g. devise to A, in fee-simple, for the use of Z, &c.), would not be executed by our statute, although it would be by statute 27 Henry VIII, c. 10. So neither would a use limited upon a *feoffment*; in short, no use will be executed with us, unless it be created by bargain and sale, covenant to stand seized, or lease and release. * * * * Uses belonging to either of these four classes are cognizable only in equity, but are still maintainable there, as all uses were prior to the statute 27 Henry VIII; but such unexecuted uses, as has been said, bear since the statute, the name of trusts. They descend, are conveyed, and are liable to debts, like legal estates, and are closely assimilated to them in all particulars; only legal estates are cognizable no where else but in a court of law, and trusts in a court of equity alone." As 27 Henry VIII was displaced by this legislation, narrowing the scope of the statute of uses, it would be inconsistent to say we have any common law principle carrying our statute of uses to cases not within it. If it repealed 27 Henry VIII, chapter 10, it necessarily displaced any common law principle having the same scope and effect as the repealed statute.

Time and labor would be uselessly consumed in an attempt to define conveyances by deeds of bargain and sale, lease and release and covenants to stand seized and distinguish them from all the numerous other modes of conveyance known to the law. It suffices to say that, unless the deed in question here is within one or the other of these three classes, the use was not executed by the statute, in other words, the legal title was not, by force of the statute, transferred from the trustee

to the *cestui que trust*, although she may have been capable of taking and holding the legal title, and no violence would have been done to the intention of the parties, in view of the statute in force at the date of the deed, giving married women the right to enjoy their separate property in all cases free from the control of their husbands. The liberation of the separate property of married women cannot be considered an amendment or liberalization of the statute of uses, for that statute was in no sense peculiar, nor limited, to the estates of married women. It is earnestly contended, however, that this deed is a deed of bargain and sale, and, therefore, within the statute, because the grantor "doth grant, bargain and sell." It is more than a deed of bargain and sale. The word "grant," under the statute of grants, passed in 1849, is alone sufficient to carry to the grantee the legal title. Where the deed or other instrument is sufficient, independently of the statute of uses, to pass the legal title, the statute of uses probably has no application; for its help is not needed. Prior to the passage of the statute of grants, this deed would not have been sufficient, without the aid of the statute of uses, to pass the legal title from the grantor to the grantee. The word "grant" contained in it would have been inoperative, because it was then beyond the power of any man to grant his land to another. The term being, at that time, inoperative and useless, the other terms used would have made it a deed of bargain and sale, and the statute of uses would have passed the legal title to the bargainee. The statute of uses was designed to aid those conveyances which could not pass the legal title without its aid. It may logically follow that, as an instrument sufficient in itself to divest the owner of his entire interest, legal and equitable, and vest it in another, does not need its aid, it does not apply. However, if, by force of it, the words "bargain and sell" pass the legal title, the word "grant" makes the deed itself convey that title, under the statute of grants, independently of the statute of uses. Moreover, if this deed operates, only under the statute of uses, as a deed of bargain and sale, between the grantor and the trustee, then the use in Mrs. Blake was a second use, or a use upon a use, which even 27 Henry VIII would not have executed. 2 Min. Ins. 186; 2 Wash. R. Prop. 161. But the question involved here is not whether

the legal title passed to the trustee, but whether the statute of uses transferred that title from the trustee to the *cestui que trust.* Between these two parties there was no bargain and sale, nor lease nor covenant to stand seized. There was an express trust in favor of Mrs. Blake, created by the contract between her husband and the trustee, and, as has been shown, our statute does not extend to trusts of any kind, nor execute them in any case, although the statute 27 Henry VIII did execute all trusts except what were known as special trusts—trusts imposing duties upon the trustees which had to be kept alive to avoid defeating the intention of the parties.

The legal title having been thus shown to be outstanding in the heirs of the trustee, there is jurisdiction in equity to compel a conveyance thereof to those in whom the equitable title is vested. It matters not that a court of law might entertain the *cestui que trust* in an action of ejectment, on the presumption of a conveyance of the legal title, after the purposes of the trust have been accomplished, as held in *Hopkins* v. *Ward*, 6 Munf. 38, *Suttle* v. *R. F. & P. R. R. Co.*, 76 Va. 384, and other cases cited in *Hollinsworth* v. *Sherman*, 81 Va. 668-672; for, if the owners of the equitable title were in possession, they might still maintain a bill in equity to compel a conveyance of the legal title and so clothe themselves therewith. Though there may be a remedy at law, it is an incomplete, and, therefore, an inadequate, one, for it fails to give the parties all the relief they are entitled to. In ejectment, they could recover the possession only and would then have the right to sue in equity for the legal title, and for the removal of all clouds thereon.

Denial of title in the plaintiffs is predicated upon the redemption of the land from forfeiture to the state for non-payment of taxes, in a suit brought by the state for the sale thereof in the circuit court of Fayette county. The land was returned by the sheriff as delinquent for the non-payment of taxes for the year 1888 and, at the sale of such delinquency in January, 1890, the state became the purchaser. Not having been redeemed from the auditor, it was dropped from the land books for the years 1890, 1891, 1892 and 1893. Suit was brought for the sale thereof and the commissioner to whom the cause was referred reported that the taxes for the

years 1888 and 1889 had been paid. This fact, no doubt, rendered the purchase by the state void. It proves also that the land was not forfeited for non-entry for taxation, since it had been off the land books for only four years. However, the decree of the circuit court, in permitting Blake to redeem, seems to have treated the title as being in the state, either by purchase or forfeiture, and Blake was allowed to redeem it. Now, on the principle declared in *State* v. *Jackson*, 56 W. Va. 558, 580, it is said that the redemption operated to pass the title to him. If he can thus be deemed a purchaser, he took the title in trust for the plaintiffs. Notwithstanding his conveyance, the land was carried on the land books in his name and he remained in possession thereof, taking its rents, issues and profits. He was the tenant or agent of his wife, while she lived, and of his children after her death, charged with the management and care of the farm and receiving all the profits thereof. Equity will not permit him to allow the land to be sold for taxes and purchased by him so as to give him the title as against those to whom he owed the duty of paying the taxes and protecting the title by redemption, when necessary. *Cain* v. *Brown*, 54 W. Va. 656; *State* v. *Eddy*, 41 W. Va. 95; *Batton* v. *Wood*, 27 W. Va. 58; *Williamson* v. *Russell*, 18 W. Va. 623. Moreover, it does not appear that these plaintiffs were parties to the suit in which the redemption was made. As against the state, the redemption may operate to pass the legal title to Blake, and, as against Blake, the adjudication of title in the state by forfeiture or purchase may be binding, but it is not binding upon the plaintiffs, for the reason that they were not parties thereto. They may still show that the state took nothing by her purchase, since the taxes were paid for the year for which the return of delinquency was made and the land was not omitted from the land books for the requisite period of five years. These facts are disclosed by the record adduced in evidence to prove title in the state by purchase and forfeiture and relinquishment thereof to Blake, and they break down his claim of title as against the plaintiffs, however good it may be against the state. The decree of redemption is only *prima facie* evidence of purchase or forfeiture as against persons not parties to the suit. *Star* v. *Sampsell*, 55 W. Va. 442; *Coal Co.* v. *Howell*, 36 W. Va. 489; *Bennett* v. *Preston*,

59 W. Va. 681. To conclude parties by its decree a court must have jurisdiction of them. It does not appear that these heirs were made parties as unknown claimants or otherwise.

Omission of the heirs to have the land taxed in their names or any of them after 1887, when they acquired the equitable title by the death of their mother, is relied upon as ground of forfeiture of the title to the state, for failure to cause the land to be taxed in the names of the true owners. Taxation in the name of Blake, the former owner, and, therefore, under the same title, prevents such forfeiture. *Lohrs* v. *Miller*, 12 Grat. 452; *Bradley* v. *Ewart*, 18 W. Va. 598; *Sturm* v. *Fleming*, 26 W. Va. 54; *Lynch* v. *Andrews*, 25 W. Va. 751; *Sult* v. *Hochstetter Co.*, decided at the present term. Between Blake and these plaintiffs there is privity in title, which brings the case within the principles declared by decisions just referred to.

Title by adverse possession in Lewis Blake is also set up by way of defense. The deed to Woolwine, trustee, contained a covenant of general warranty. As against his own deed, it is utterly impossible that Blake could acquire title by adverse possession. His covenant of warranty passes by estoppel any title he may have afterwards acquired which was outstanding, or is presumed to have been outstanding, at the time of the execution of the deed. He does not claim under that deed in any sense. He relies upon a strange hostile title, which was presumptively outstanding ·at the date of the execution of his deed, and which he has since, in some way, acquired. Against the assertion of such a title, he bound himself by his covenant to uphold his deed and defend it, and the law does not permit him to set it up in himself by purchase or otherwise. His acquisition thereof, no matter how effected, enures to the benefit of the covenantee. *Summerfield* v. *White*, 54 W. Va. 311; *Clarke* v. *Sayers*, 55 W. Va. 512; *Yock* v. *Mann*, 57 W. Va. 187. Besides, there is no evidence of any attempt to assert such title as against Mrs. Blake in her lifetime or her heirs after her death. The husband and father was simply permitted to remain in possession after the execution of his deed, and, in the absence of any attempt on his part to assert title against them or deny their right, there is a presumption that he was a mere tenant at will or sufferance. Having given himself the character of

tenant by executing the deed and remaining in possession, he cannot now claim to have been holding adversely to his landlords. *Rowlett* v. *Daniels*, 4 Munf. 473; *Duval* v. *Bibb*, 3 Call. 362.

There is nothing in the contention that equity will not entertain the plaintiffs because they are out of possession. They come into equity not merely to have clouds removed from their title. Legally they have no title, but, in equity, they have. The object of the bill is the vindication of an equitable title, not cognizable at law, and courts of equity are always open for such purposes, and, having jurisdiction therefor, may give any further relief to which the parties are entitled. If the plaintiffs were in possession, they would have standing in a court of equity to call in the legal title, and, entertaining them for that purpose, the court would necessarily have to decide whether they have the legal title as against the defendants. Incidentally, therefore, the court must have, in such case, power to determine the ownership of the legal title. If not, how could it compel a conveyance thereof? The question of right of trial by jury does not arise, for, by the deed, the equitable has been separated from the legal title and made a subject of equitable cognizance. In this way, the original parties thereto subjected themselves voluntarily to jurisdiction in equity, and those who have subsequently connected themselves with the subject matter stand in privity with the original parties and have likewise subjected themselves to the same jurisdiction. This is the doctrine of *Swick* v. *Rease*, 62 W. Va. 567, (59 S. E. 510.)

Upon the principles declared, and for the reasons stated herein, the decree will be reversed, the demurrer overruled, and a decree will be entered requiring the heirs of M. E. Woolwine, deceased, the trustee, to convey to the plaintiffs the legal title to the lands in controversy and cancelling the deeds executed by Blake and wife to Hawkins and by Hawkins to the Dillon Coal and Land Company, and the cause will be remanded for execution of such decree.

*Reversed.   Remanded.*