HAROLD E. CARTER AND VERA A. CARTER

*v.*

S. G. JONES AND EVA A. JONES

(No. 11084)

Submitted January 20, 1960. Decided February 23, 1960.

*Horace S. Meldahl,* for plaintiffs in error.

*Wm. T. Brotherton, Jr., J. Howard Hundley,* for defendants in error.

GIVEN, JUDGE:

This proceeding, instituted in the Court of Common Pleas of Kanawha County, was prosecuted for the purpose of having determined the true boundary line dividing the property of plaintiffs, Harold E. Carter and Vera A. Carter, husband and wife, and the property of defendants, S. G. Jones and Eva A. Jones. A verdict was returned in favor of defendants and the trial court, having overruled a motion to set aside the verdict, entered judgment, in accordance with the verdict, for defendants. The Circuit Court of Kanawha County, on writ of error, affirmed the action of the trial court.

Prior to August 31, 1942, Dayton Rhodes acquired title to certain lots situated in Block A of Hollywood Manor, a subdivision in Kanawha County, including lots 4, 5, 6 and 7. On that date he and his wife executed a deed conveying to plaintiffs lot 7 and the northerly half of lot 6, and other property. The northerly half of lot 6 is described in the deed as "that portion or half of said Lot Number 6 adjacent to Lot Number 7 and fronting 25.27 feet on Tyler Boulevard and extending back therefrom between parallel lines, and running with the line of said Lot Number Seven, a distance of 114.7 feet to Lot Number Twenty".

Out of the property so acquired by Dayton Rhodes, he and his wife, on September 22, 1948, conveyed to defendants, by metes and bounds, all of lots 4 and 5, and "all of the southerly 25.28 feet of Lot No. 6 of said Block A of said subdivision, being the part of said Lot No. 6 which adjoins Lot No. 5". The line dividing the northerly part of lot 6 from the southerly part thereof, attempted to be fixed by the two deeds, is the line here in dispute. There appears to be no material difference in the effect of the deeds as to the location of that line. Its true location on the ground, however, is in controversy.

The present proceeding was instituted August 17, 1957. Sometime in the latter part of 1946, Carters, the owners of the northerly part of lot 6, and Rhodes, predecessor in title of defendants, the owner of the southerly part of lot 6, decided to erect a fence along or near the line between their properties. For such purpose Rhodes and Harold E. Carter, using an ordinary tape line, measuring from what they believed to be an established monument in the survey, to a point in the front line of lot No. 6, located a line for the purpose of erecting the fence between their properties, and, almost immediately, commenced the erection of a wire fence along the line so located, which fence was completed soon thereafter, both parties helping with the erection thereof, and which fence was

maintained by the parties until about the time of the institution of this proceeding. The evidence before us is in conflict as to whether the fence was erected on the line as fixed by the deeds.

The grantors and the grantees in the deed of August 31, 1942, testified to the effect that it was not the intention of the parties to erect a fence exactly on the division line, and that there was no intention to claim any land beyond the true location of the center line of lot 6, as established by the deeds. The evidence before us, however, indicates strongly that the parties intended to erect the fence on the true line, that a substantial fence was erected and maintained between the properties, on the line as located by them, and that substantial improvements were made by each of the owners on their respective properties, near or touching the fence so maintained, and that the parties, respectively, exercised full and complete possession and control of their respective properties, to the fence, until about the time of the institution of this proceeding. It may be noticed that defendants obtained their deed less than ten years prior to the institution of this proceeding, but that the time between the erection of the fence by Carters and Rhodes, Rhodes being the predecessor in title of defendants, and the institution of the proceeding, was more than ten years.

After the jury had considered of their verdict, they returned in open court with a verdict in the following language: "We, the jury, find for the plaintiffs, Harold E. Carter and Vera A. Carter, according to the survey and Map made by James Sell, dated October 5, 1957, Exhibit No. 5, provided, however, that the plaintiffs, Harold E. Carter and Vera Carter, pay all court costs, incident to this case." Thereupon, plaintiffs moved the court to "receive the verdict, but to strike therefrom or disregard the provision concerning costs". Over objections of plaintiffs, the court refused to accept the verdict, and directed the jury to return to their room, "and further consider

generally of their verdict". After further consideration, the jury returned the verdict for defendants on which the judgment complained of was entered.

Was there reversible error in the action of the trial court in refusing to accept the first verdict, quoted above, or in requiring the jury to consider further of their verdict? We have concluded that such actions were not reversible error.

Mere surplusage does not affect the sufficiency or validity of a verdict. The surplusage may be disregarded, and judgment rendered on the verdict. *Bell v. Huntington Development and Gas Co.*, 106 W. Va. 155, 145 S. E. 165. But "Where the jury returns a verdict which is so defective that a proper judgment cannot be rendered thereon, it is the duty of the trial court under proper instructions to require the jury to retire for the purpose of returning a proper verdict." Point 3, syllabus, *Brewer v. Appalachian Constructors, Inc.*, 138 W. Va. 437, 76 S. E. 2d 916. See 19 M.J., Verdict, Section 9. Ordinarily, where the finding of the jury is definite, and the verdict undertakes to fix costs, the provision relating to costs may be treated as surplusage and judgment rendered on the verdict. *Blair-Parke Coal and Coke Co. v. Fiedler-Davis Fuel Co.*, 98 W. Va. 374, 127 S. E. 81. Though a trial judge may not invade the province of the jury, or permit his personal views concerning the weight of the evidence to influence the jury, it is his duty to require the jury to return a verdict in understandable form. *Brewer v. Appalachian Constructors, Inc., supra*. See *Hunt v. Ajax Coal Co.*, 85 W. Va. 736, 102 S. E. 603; *Yonker v. Grimm*, 101 W. Va. 711, 133 S. E. 695; *State v. Davis*, 74 W. Va. 657, 82 S. E. 525; *State v. Cobbs*, 40 W. Va. 718, 22 S. E. 310.

Looking to the language contained in the first verdict, we think it clear that there was not a definite finding by the jury as required by the authorities. Clearly, we think, the finding was made conditional on the court requiring the plaintiffs to pay the costs, and amounted to an indefinite or insufficient finding

or verdict. To have entered judgment on the verdict, the trial court would have had to disregard the condition, adopt a finding not warranted by the language, or, in effect, give to the language a meaning not intended. That the court could not do. The fact that the jury returned the second verdict in favor of defendants would, perhaps, clearly indicate that the first verdict was intended to be conditional, though the language of the verdict, of course, must be looked to for controlling effect.

On the trial of the case before the jury, defendants relied, in part, on adverse possession, contending that the possession of Rhodes subsequent to the location of the division line and the erection of the fence should be tacked to the possession of defendants in considering whether the ten year statutory limitation could be made applicable. Plaintiffs in error contend that no question of adverse possession should have been submitted to the jury, for the reason that the deed to them was less than ten years old, and that to permit the tacking of possession would permit a grantor to claim adversely against his grantee, against the rule followed in *Blake v. O'Neal,* 63 W. Va. 483, 61 S. E. 410. The issue before us is extremely narrowed, for the reason that only part of the evidence before the jury relating to adverse possession was ever transcribed or made a part of the record. The certificate of the trial judge and the order filing the bill of exceptions show that only ''certain of the testimony and exhibits pertaining to the issue of adverse possession'' were made part of the record of the case, while it is clear, from that part of the record before us, that the issue as to adverse possession was submitted to the jury and that a number of witnesses, whose evidence is not a part of the record, testified as to such issue. In such circumstances, we can not examine the evidence as to such issue. ''2. Evidence introduced at the trial of an action but not made part of the record by bill of exceptions will not be considered on appeal.'' *Bashar v. Pittsburg, Cincinnati, Chicago & St. Louis*

*Railway Co.,* 73 W. Va. 39, 79 S. E. 1009. See *Grotten-dick v. Webber,* 134 W. Va. 798, 61 S. E. 2d 854; *Ault v. O'Brien, Judge,* 121 W. Va. 705, 6 S. E. 2d 228; *Sheppard v. Meridian Insurance Co.,* 108 W. Va. 569, 151 S. E. 846; *Coal Run Coal Co. v. Cecil,* 94 W. Va. 116, 117 S. E. 697; *State v. Goldstrohm,* 84 W. Va. 129, 99 S. E. 248; Code, 56-6-35; Code, 56-6-36; Rule I, Rules of Practice in the Supreme Court of Appeals.

The only question before us, therefore, insofar as the issue of adverse possession is concerned, is whether, in any circumstance, that issue could properly have been submitted to the jury. We need not determine whether that part of the evidence before us is sufficient to support the verdict, for the very good reason that the jury would have the duty of considering and weighing all proper evidence before them relating to that issue, and all of the evidence not having been made part of the record, we must accept the finding as having been fully supported.

Plaintiffs in error rely, principally, at least, on the holdings of *Blake v. O'Neal,* 63 W. Va. 483, 61 S. E. 410. The pertinent holdings are: "6. If the grantor in a deed, containing a covenant of general warranty, conveying away the title in fee simple, remain in possession after the execution thereof, he is presumptively the tenant of the grantee, and cannot set up an independent title in himself, without having shown some act of ouster of his landlord, or the equivalent thereof. 7. The grantor so remaining in possession cannot set up title against the grantee or his heirs by adverse possession, if, by his deed, he has warranted generally the title to the land. Such covenant passes, to the covenantee, by estoppel, a pre-existing outstanding title, subsequently acquired by the covenantor." In the opinion, the Court said: "* * * As against his own deed, it is utterly impossible that Blake could acquire title by adverse possession. His covenant of warranty passes by estoppel any title he may have afterwards acquired which was outstanding, or is presumed to have been outstanding, at the time

of the execution of the deed. He does not claim under that deed in any sense. He relies upon a strange hostile title, which was presumptively outstanding at the date of the execution of his deed, and which he has since, in some way, acquired. Against the assertion of such a title, he bound himself by his covenant to uphold his deed and defend it, and the law does not permit him to set it up in himself by purchase or otherwise. His acquisition thereof, no matter how effected, enures to the benfit of the covenantee. *Summerfield v. White,* 54 W. Va. 311; *Clarke v. Sayers,* 55 W. Va. 512; *Yock v. Mann,* 57 W. Va. 187. Besides, there is no evidence of any attempt to assert such title as against Mrs. Blake in her lifetime or her heirs after her death. The husband and father was simply permitted to remain in possession after the execution of his deed, and, in the absence of any attempt on his part to assert title against them or deny their right, there is a presumption that he was a mere tenant at will or sufferance * * *''.

Though the language is strong, it is properly applied to the facts in that case. It will be noticed, however, that neither the holdings nor the conclusion stated in the opinion can be made applicable to the facts in the instant case. The holding in the *Blake* case was that the grantor was merely ''presumptively the tenant of the grantee'', clearly a presumption that could be, in a proper case, rebutted, that no ''ouster'' was shown to exist, and that a ''pre-existing outstanding title'' was involved, which was acquired ''subsequently'' to the date of the conveyance involved. In the instant case, the defendants contend that there was an ouster and that the title claimed originated and was acquired subsequent to the date of the conveyance involved, and that no relationship of landlord and tenant could have existed, that is, there was an ouster of Carters by Rhodes, and the existence of the essential elements of adverse possession existed for ten years subsequent to the ouster. These, we think, could have been proper issues for the jury and, all

of the evidence relating to such issues not being contained in the record, we can not say that their finding was wrong.

In 2 C.J.S., Adverse Possession, Section 95b, it is stated: "While, as stated in the preceding section, the continued possession of land by the grantor thereof after execution of a deed is presumed, in the absence of any showing to the contrary, to be in subordination to the title of the grantee, it is none the less true that the conveyance does not of itself prevent the grantor from acquiring title by adverse possession against his grantee, as upon an explicit disclaimer of the relationship and a notorious assertion of right in himself. There is nothing in the relation of vendor and vendee by deed executed and not executory which will prevent the vendor who may remain in possesion, or who may afterward take possession, from claiming adversely to the vendee and relying on the statute of limitations. The covenant of warranty contained in the deed will not defeat title by limitations acquired after the deed. Such title is no breach of the covenant, which cannot be extended to cover future laches of the grantee whereby he loses the title conveyed to him." See 1 Am. Jur., Adverse Possession, Section 48; *William James Sons Co. v. Hutchinson,* 79 W. Va. 389, 90 S. E. 1047; *Custer v. Hall,* 71 W. Va. 119, 76 S. E. 183; *Parker v. Brast,* 45 W. Va. 399, 32 S. E. 269; *Justice v. Lawson,* 46 W. Va. 163, 33 S. E. 102; *Cooey v. Porter,* 22 W. Va. 120. In *Cox v. Cox,* 134 Va. 307, 114 S. E. 672, it is stated: "Where, as in the instant case, the possession is originally taken under and in privity with the title of the true owner, it may subsequently become adverse without actual notice thereof to the latter, but only in the event that the possession is accompanied by an unequivocal, clear, postive, continued disclaimer of the owner's title, such as the owner could not mistake, for the whole of the statutory period, and so notorious that there is no other reasonable conclusion than that the owner, under the circumstances, must have had notice thereof. The dis-

claimer, to constitute such constructive notice, may be proved by circumstantial as well as by direct evidence * * *''.

It seems clear, therefore, that the defendants in the instant case had the right to attempt to establish, by proper evidence, an ouster by Rhodes of Carters as to the parcel of land in controversy, and that possession of the parcel was held by Rhodes and defendants adversely for the ten year period. In considering such questions, the jury would be entitled to consider and weigh all the evidence, including necessary or proper inferences arising from circumstances proved or admitted. They would not be required to limit their consideration to categorical answers of some of the witnesses.

The judgments of the Court of Common Pleas of Kanawha County and the Circuit Court of Kanawha County are affirmed.

*Affirmed.*